626 A.2d 146

In re Petition of Ross CIOPPA to Challenge and Strike
the Nomination Petitions of Peter W. Zentner,
Marilyn J. Stevens and Richard W. Masten.

Appeal of Peter W. ZENTNER, Marilyn
J. Stevens and Richard W. Masten.

In re Nomination Petition of William BARANYAI, Jr., Gary Lang
and Christine Grossman for the Nomination of the Democratic
Party for Councilman for the Borough of Millvale, Allegheny
County, Pennsylvania, Appellants,

v.

Donald ANDREZJWSKI and John F. Kearney.

Supreme Court of Pennsylvania.

Argued May 6, 1991.

Decided June 2, 1993.

Sanford Kelson, Pittsburgh, for appellants in No. 36.

Jay H. Spiegel, Pittsburgh, for appellee in No. 36.

Stanley B. Lederman, Pittsburgh, for appellants in No. 37.

Paul M. Daniels, Pittsburgh, for appellee in No. 37.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NIX, Chief Justice.

In these consolidated appeals we are asked to decide whether the requirements of the Public Official and Employee Ethics Act ("Ethics Act"),[1] specifically with respect to the filing of financial interests statements, were complied with by six candidates seeking inclusion on the May, 1991, primary ballot for municipal office.

In the appeal docketed at No. 36 W.D. Appeal Docket 1991, the nomination petitions of Peter W. Zentner, Marilyn J. Stevens and Richard W. Masten, prospective candidates for council seats in the Borough of Braddock Hills, Allegheny County, were challenged via a petition to set aside by a qualified elector, Ross Cioppa, in the Court of Common Pleas of Allegheny County. The reason advanced for this challenge centered on the candidates' alleged failure to timely file their financial interests statements as required by Section 4(b) of the Ethics Act. The Ethics Act requires these statements be filed with the local governing authority on or before the last day for filing a petition to appear on the ballot for election. 65 P.S. § 404(b)(2). The last day for filing nomination petitions in this primary election was March 12, 1991.

1. Act of October 4, 1978, P.L. 883, No. 170, § 1, *as reenacted and amended*, June 26, 1989, P.L. 26, No. 9, § 1, 65 P.S. §§ 401–413.

On March 6, 1991, Mr. Zentner hand-delivered the three statements at issue to Mr. Leonard Cunic, a Council Member for the Borough of Braddock Hills. Councilman Cunic accepted the statements and assured Mr. Zentner that he would deliver the statements to the Borough Secretary that evening during a Borough meeting. Unfortunately, Councilman Cunic's memory failed him and he neglected to deliver the statements. It was not until shortly after the filing deadline that the statements were delivered to the Borough Secretary. These financial statements were, however, timely and properly filed with the Allegheny County Department of Elections.

The trial court, following a hearing held on the petition, dismissed the challenge and determined that under the particular circumstances, the spirit of the Ethics Act had been observed. On appeal to the Commonwealth Court, a divided panel sustained the challenge, reversed the decision of the lower court, and ordered the Department of Elections to set aside the nomination petitions of these candidates. 139 Pa. Cmwlth. 314, 590 A.2d 821. The basis of the Commonwealth Court's rejection of the nomination petitions was its finding that the candidates failed to timely file their respective financial disclosure statements with the local governing authority as required by the Ethics Act.

Shortly thereafter, on May 3, 1991, this Court granted the candidates' Application for a Stay pending further order. Oral argument before this Court was held on May 6, 1991, following which we entered, on May 10, 1991, a *per curiam* order reversing the order of the Commonwealth Court, thus permitting the candidates' names to appear on the primary ballot. 527 Pa. 284, 590 A.2d 752 (1991). We noted that an opinion would follow.

In the second appeal, docketed at No. 37 W.D. Appeal Docket 1991, Donald Andrezjwski and John F. Kearney, qualified electors, filed in the Court of Common Pleas of Allegheny County a petition to set aside the nomination petitions of William Baranyai, Jr., Gary Lang and Christine Grossman, candidates seeking the Democratic nomination for the position of Council member in the Borough of Millvale, Allegheny

County, in the May, 1991, municipal primary. As was the case in the first appeal, the essence of the challenge to strike the nomination petitions was the alleged failure to file with the governing authority of Millvale the financial interests statements on or before the March 12, 1991, deadline, as required by the Ethics Act.

In this case the candidates timely filed their financial interests statements with the Allegheny County Department of Elections along with their nomination petitions; however, these statements were not filed in Millvale before the March 12, 1991, deadline. When the three candidates attempted to file the statements on March 21, 1991, the Millvale Borough Secretary refused to accept them. The statements were eventually filed with the Borough on March 26, 1991.

The trial court, following a hearing, dismissed the challenge to the nomination petitions and entered an order, dated March 26, 1991, permitting the names to be included on the primary ballot. The Commonwealth Court, however, in a unanimous panel decision, sustained the challenge, reversed the trial court and directed the Allegheny County Elections Department to strike the candidates' names from the ballot. 139 Pa.Cmwlth. 320, 590 A.2d 824. Following oral argument before this Court on May 6, 1991, we entered a *per curiam* order on May 10, 1991, reversing the Commonwealth Court order, thereby permitting the candidates to proceed on the ballot. 527 Pa. 285, 590 A.2d 753 (1991). Again, we noted an opinion would follow.

The sole issue presented by these appeals is whether the failure to timely file financial interests statements in the proper manner with the local governing authority is a fatal defect calling for the striking from the ballot candidates who fail to so file.

■ We begin our discussion with the recognition of the longstanding and overriding policy in this Commonwealth to protect the elective franchise. *See In re Jones,* 505 Pa. 50, 476 A.2d 1287 (1984); *In re Recount of Ballots,* 457 Pa. 279, 325 A.2d 303 (1974); *Miller Election Contest Case,* 351 Pa. 469, 41

A.2d 661 (1945); *In re Cole's Election,* 223 Pa. 271, 72 A. 510 (1909). In so doing, our Election Code[2] should be liberally construed so as not to deprive a candidate of the right to run for office or the voters of their right to elect a candidate of their choice. *See Wieskerger Appeal,* 447 Pa. 418, 290 A.2d 108 (1972); *Perles v. Hoffman,* 419 Pa. 400, 213 A.2d 781 (1965); *Nomination Petition of Ross,* 411 Pa. 45, 190 A.2d 719 (1963).

In *Commonwealth, State Ethics Commission v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982), a case factually similar to the instant cases, a unanimous Court concluded that failure to timely file the required financial interests statements, in that case with the State Ethics Commission, was not a fatal defect to the nomination petition and could be cured by amendment. Our General Assembly, however, in apparent response to our *Baldwin* decision, amended and reenacted the Ethics Act in 1989 to include the following language: "Failure to file the [financial interests] statement in accordance with the provisions of this act shall.... be a fatal defect to a petition to appear on the ballot." 65 P.S. § 404(b)(3). This language is clear and unambiguous. Our Statutory Construction Act of 1972[3] explicitly provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Hence, the General Assembly foreclosed the possibility for curing by amendment the untimely filing of a financial interests statement with the local governing authorities, and by the same token foreclosed our inquiry into the individual circumstances which may have contributed to the untimely filings.

When we entered our orders reversing the Commonwealth Court, our foremost concern was to insure that the challenged candidates' names appeared on the ballot given the time constraints imposed by the fast-approaching primary election. This concern was chiefly motivated by our perception that in

---

2. Act of June 3, 1937, P.L. 1333, art. I, § 101, *as amended,* 25 P.S. § 2601 *et seq.*

3. Act of December 6, 1972, No. 290, § 3, 1 Pa.C.S. § 1501 *et seq.*

each of these cases the spirit of the Ethics Act was complied with and to permit forfeiture of a candidacy would be too harsh a result in view of our liberal policy in this Commonwealth to favor enfranchisement. However, upon further review of the legislative mandate and its history, we are now convinced that the Commonwealth Court properly decided these cases, and that our May 10, 1991, orders reversing the Commonwealth Court were ill-advised.

We are now left with the question of crafting a remedy in this case. As a result of our May 10, 1991, orders, the six candidates involved here were permitted to appear on the primary ballot. To now void the results of an election where all candidates were submitted to the voters, with late but nonetheless filed financial statements which left adequate time for study by the electorate, would be an unnecessary disenfranchisement. Of course, to those candidates who were unsuccessful in the primary election, this issue is moot.

The power to vitiate a ballot for minor irregularities should be used sparingly. It should be done only for very compelling reasons. *Norwood Election Contest Case,* 382 Pa. 547, 116 A.2d 552 (1955). As stated by this Court in *Appeal of James,* 377 Pa. 405, 105 A.2d 64 (1954):

> [I]n the sphere of popular elections which, after all, constitute the very warp and woof of democracy, nothing can be more vital in the accomplishment of an honest and just election than the ascertainment of the intention of the voter. "Election laws will be strictly enforced to prevent fraud, but ordinarily will be construed liberally in favor of the right to vote. All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor. Where the elective franchise is regulated by statute, the regulation should, when and where possible, be so construed as to insure rather than defeat the exercise of the right of suffrage. Technicalities should not be used to make the right of the voter insecure...."

*Id.* at 408, 105 A.2d at 65–66 (citation omitted).

Guided by these principles and in the spirit of liberality in construing our Election Code, we decline to vacate our

previous orders. However, the rationale expressed in this opinion shall operate prospectively. In short, hereafter failure to file the requisite financial interests statement within the prescribed time shall be fatal to a candidacy.

McDERMOTT and ZAPPALA, JJ., did not participate in the decision of these cases.

PAPADAKOS, J., files a concurring opinion in which LARSEN, J., joins.

CAPPY, J., concurs in the result.

PAPADAKOS, Justice, concurring.

I concur in the result reached by the Court, but I disagree with the short shrift given to the facts in the matter of Ross Cioppa, et al., No. 36 W.D. Appeal Docket 1991.

As stated in the Per Curiam Opinion, the Ethics Act requires that financial statements be filed with the local governing authority on or before the last day for filing a petition to appear on the ballot for election. Mr. Zentner hand delivered his financial statement and those of Marilyn J. Stevens and Richard W. Masten to Mr. Leonard Cunic, a council member for the Borough of Braddock Hills. Mr. Cunic accepted the statements and assured Mr. Zentner that they would be delivered to the Borough Secretary that evening during the Borough meeting. He neglected to do so and they were subsequently deposited with the Borough Secretary after the deadline had expired.

The problem I have with the case is that the Ethics Act does not define the phrase "local governing authority." The majority assumes, *sub silentio*, that the Borough Secretary is the local governing authority. Without more, I cannot make that assumption.[1] I believe that the mayor and council are the

---

1. I note that the Ethics Commission has directed applicants for council positions to file their statements with the borough secretary. This appears in the instruction section which is part of the Financial Disclosure Statement. I know not from whence this authority arises for the Commission to expand on the Act of the Legislature which merely compels filing with the local government authority. I, there-

governing authority and the proper delivery to any of those members constitutes delivery to the local governing authority as required by the Act. Of course, I will concede that the borough secretary is authorized to accept documents on behalf of the local governing authority. But I do not concede that the borough secretary is the local governing authority.

In many small municipalities, the office of Borough Secretary is handled by one person. Would the majority come to the same conclusion if the borough secretary were unavailable and the police chief unofficially filled in during the absence of the borough secretary? Or is the majority saying, again *sub silentio*, that delivery of the financial statement must be made to the *office* of the borough secretary, no matter what Borough official or employee may be manning the desk? If so, they should say so. Because I find that the delivery of the financial statements of Zentner, Stevens and Masten were made to the local governing authority by handing same to a member of the governing body, I believe that the mandate of the Ethics Act was met. I, therefore, concur in the result.

LARSEN, J., joins this concurring opinion.

fore, would consider this instruction by the Commission to be directive and not mandatory.