In re Nominating Petition of John J. OL-SHEFSKI, III, for Position of Dickson City, Mayor, Lackawanna County, Pennsylvania, Democrat.

Petition of Michael KULA. (Six Cases)

In re Nominating Petition of Bruce CIZIK for Position of Dickson City, Borough Council, Lackawanna County, Pennsylvania, Democrat.

In re Nominating Petition of Celia GAL-LIS for Position of Dickson City, Tax Collector, Lackawanna County, Pennsylvania, Democrat.

In re Nominating Petition of William BOTT for Position of Dickson City, Borough Council, Lackawanna County, Pennsylvania, Democrat.

In re Nominating Petition of Dean T. SPOSTO for Position of Dickson City, Borough Council, Lackawanna County, Pennsylvania, Democrat.

In re Nominating Petition of Thomas P. RAINEY for Position of Dickson City, Controller, Lackawanna County, Pennsylvania, Democrat.

Appeal of John J. OLSHEFSKI, Bruce Cizik, Celia Gallis, William Bott, Dean T. Sposto and Thomas P. Rainey, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 1997.
Decided April 22, 1997.

George A. Reihner, Scranton, for appellants.

William T. Jones, Scranton, for appellee.

Before COLINS, President Judge, DOYLE, J., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

John J. Olshefski, Bruce Cizik, Celia Gallis, William Bott, Dean T. Sposto, and Thomas P. Rainey (collectively, Candidates) appeal from a decision of the Court of Common Pleas of Lackawanna County which struck their names from the ballot for various offices in the primary election to be held on May 20, 1997, because they failed to timely file a Statement of Financial Interests in accordance with Section 4(b)(2) of the Public Officials and Employee Ethics Act (Ethics Act).[1]

We believe that the trial judge, Judge Carmen D. Minora, has, in a well-reasoned and incisive opinion, thoroughly framed, discussed, and resolved the issues presented by this appeal. Consequently, we believe that it is appropriate to affirm the decision of the Common Pleas Court by adopting the opinion authored by Judge Minora, which is reproduced in pertinent part below with minor editorial changes:

### STIPULATIONS OF FACT

"The following Stipulations of Fact have been agreed to by the parties by and through their respective legal counsel.

1. The municipal primary election this year is on May 20, 1997.
2. The last day for all filings for the May 20, 1997 municipal primary was March 11, 1997.
3. All the Respondents in this series of cases are members of the Democratic party.
4. Each candidate filed Nominating Petitions and Statements of Financial Interest with the Lackawanna County Bureau of Elections on or before March 11, 1997.
5. Two Council Persons who collected Statements of Financial Interest are incumbent office holders.
6. Respondent Bruce Cizik, candidate for Council, who responded at 97 CIVIL 1327, took his Statement of Financial Interest on March 7, 1997, and gave it to incumbent Council Person Anthony Gallis at Anthony Gallis offices located on Oak Street in Scranton, Pennsylvania.
7. Respondent Dean T. Sposto, candidate for Council, who responded at 97 CIVIL 1330, on March 10, 1997, gave his Statement of Financial Interest to incumbent Council Person Donald Kazmerski at Dean T. Sposto's apartment located within Dickson City.
8. Respondent Thomas P. Rainey, candidate for Borough Controller, who responded at 97 CIVIL 1331, gave his Statement of Financial Interest to Donald Kazmerski at the home of Thomas P. Rainey in Dickson City on March 9, 1997.
9. Respondent John J. Olshefski, III, candidate for Borough Mayor, on March 7, 1997, gave his Statement of Financial Interest to Anthony Gallis at the office of Anthony Gallis on Oak Street in Scranton, Pennsylvania.
10. Respondent Celia Gallis, candidate for Borough Tax Collector, who responded at 97 CIVIL 1328, on March 7, 1997, gave her Statement of Financial Interest to Anthony Gallis at their home in Dickson City.
11. Respondent William Bott, candidate for Borough Council, who responded at 97 CIVIL 1329 gave his Statement of Financial Interest to Anthony Gallis at the offices of Anthony Gallis located on Oak Street in Scranton, Pennsylvania.

---

**1.** Act of October 4, 1978, P.L. 883, June 26, 1989, P.L. 26, *as reenacted and amended,* June 26, 1989, P.L. 26, 65 P.S. § 404(b)(2).

12. Donald Kazmerski then presented the documents he had received from Dean T. Sposto on March 10, 1997, and Thomas P. Rainey on March 9, 1997, to Anthony Gallis on March 10, 1997, at the Gallis home in Dickson City.

13. On March 18, 1997, Mr. Gallis transported these various Statements of Financial Interest to the Borough Building in Dickson City, after having collected the two from Mr. Kazmerski and the four that Anthony Gallis collected personally both in Dickson City and at his office in Scranton.

This concludes the Stipulations of Fact as agreed to by the parties.

### FINDINGS OF FACT

"The Court also engaged in certain Findings of Fact after the taking of testimony in this particular case. Findings of Fact the Court has concluded are as follows:

1. Mr. Gallis testified that all the documents, once secured, were on his desk in his insurance office in the City of Scranton in a folder and that it was his understanding that they had been filed when they were filed with a borough official, specifically himself.

2. Mr. Gallis' office is located at 1101–1102 Oak Street in Scranton, Pennsylvania.

3. Mr. Gallis told the various candidates that he would take their Statements of Financial Interest to the Borough Secretary.

4. That there exists a building and situs containing the offices of the Borough of Dickson City which are open from 8:00 A.M. to 4:00 P.M. weekdays and that the Borough of Dickson City has several [full-time] employees.

5. The Borough has a designated Council Secretary by the name of Margaret Kohl, who is a part-time employee who works from 8:30 A.M. until 2:30 P.M. without a lunch.

6. The Borough also has an assistant to Ms. Kohl, a woman by the name of Katy Simone, who is the Assistant Secretary on a full-time basis from 8:30 A.M. until 4:00 P.M. with a scheduled lunch.

### DISCUSSION

■ "Initially, we note that challenges to the nominating petitions must overcome their presumption of validity. Thus, the burden is on the petitioner to show that the respondent[s'] petitions are invalid. [*Smith v. Brown*, 139 Pa.Cmwlth. 304, 590 A.2d 816 (1991); *In Re Nominating Petition of Williams*, 155 Pa.Cmwlth. 494, 625 A.2d 1279, 1280 (1993) ].

■ "Moreover, the Election Code is to be liberally construed so that the candidates running for office are not deprived of that right [and the voters are not deprived of the right] to elect the candidate of their choice. [*Smith; In re Nominating Petition of Williams; Thayer v. Lincoln Borough*, 687 A.2d 1195, 1198 (Pa.Cmwlth.1997) ].

"In these six consolidated appeals, we are asked to decide whether the requirements of the Public Official and Employee Ethics Act (Ethics Act)[,] specifically with respect to the filing of Financial Interest Statements[,] were complied with by the six candidates searching for inclusion on the May 20, 1997 municipal primary election ballot when they made timely filings of their financial interest statements with an incumbent council person[.]

"The Ethics Act requires that these statements be filed with 'the local governing authority' on or before the last day for filing a nominating petition to appear on the ballot for election (March 11, 1997), 65 P.S. § 404(b)(2). The facts in this case show a timely filing with the county Election Bureau and with an incumbent borough council person. The Court must decide if a filing with a local council person is the proper 'local governing authority' under the Ethics Act. If it is determined to be a proper filing, then the six [r]espondents are allowed on the ballot to run for office. If it is not a proper filing, then their improper effort to file would be a fatal defect according to the statute.

"With that said, we must look at the underlying statutory law which gives rise to the

argument that such a defect in filing can be 'fatal.' Section 4(b)(2) of the Ethics Act, 65 P.S. § 404(b)(2), provides that, 'any candidate for ... local office shall file a Statement of Financial Interest for the preceding calendar year with the *governing authority* of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election.' [65 P.S. § 404(b)(2) (emphasis added)]. Section 4(b)(3) provides that, 'failure to file a statement in accordance with provisions of [the Ethics] Act shall ... be a *fatal defect* to a petition to appear on the ballot.' [65 P.S. § 404(b)(3) (emphasis added)]. This provision was added to the Ethics Act in 1989 apparently to 'overrule' the Supreme Court's decision in [*State Ethics Commission v. Baldwin*, 498 Pa. 255, 445 A.2d 1208 (1982)], which allows the filing of Statements of Financial Interest after the filing date....

"A candidate, to be in strict compliance with the Act, must file a Statement of Financial Interest attached to a nominating petition to appear on the ballot with the local Election Bureau and a Statement of Financial Interest with the local governing authority. If the candidate fails to do this, it is, according to the statute, a fatal defect to the petition to appear on the ballot.

"Because the General Assembly has foreclosed the possibility for the untimely filing of Statements of Financial Interest to be considered a curable defect, the only issue before the Court is whether the candidate's timely filing with an incumbent Council person in the Borough of Dickson City constitutes a proper filing with a 'governing authority.'

"Nowhere in the Ethics Act is the term 'governing authority' defined. Each party to this particular action urges the Court to adopt a different definition of 'governing authority.' The Petitioner would have us accept the fact that the proper governing authority for accepting filings in this particular case is the Borough Building and their staff. The candidates urge us to adopt the definition that the proper governing authority in this case can be an incumbent Borough Council person since they have the authority to appoint the clerical staff who are located at the Borough Building.

## DEFINITIONS

"Because the General Assembly has elected not [to] define the term 'governing authority' within the statutory context of the Ethics Act, this Court was compelled to refer to the Webster Third New International Dictionary Third Edition in order to determine what those terms mean by dictionary definition. The word 'governing,' under definition 1(a)[,] is defined as, 'to exercise arbitrarily or by established rules continuous sovereign authority over: especially; to control the making and administration of policy....'

"The word 'authority,' [in] the same dictionary, is defined as, 'the power to require and receive submission; the right to expect obedience; superiority derived from a status that carries with it the right to command and give final decisions: dominion, jurisdiction ... (b) delegated power over others: authorization.'

"Additionally, the words [']political subdivision,['] although they have a definition under the Act also were looked to in the dictionary to further articulate what these words might mean in their legislative context. The word 'political,' under definition 1(a) states: 'of or relating to government, a government or the conduct of governmental affairs; (b): of or relating to a matter of government as distinguished from a matter of law; (c): engaged in civilian as opposed to military functions; (d): of, relating to or concerned with the making as distinguished from the administration of governmental policy.'

"The word 'subdivision' was then defined at definition (2): as, 'something produced by subdividing: as a: a part made by subdividing.' These definitions are important because the Statutory Construction Act provides in relevant part, 'when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregard under the pretext of pursuing its spirit.' 1 Pa.C.S. § 1921(b). This Court must go to great lengths in order to adhere to this maxim of statutory construction.

"In the [definition section of the] Ethics Act at 65 P.S. § 402[,] ... while the word 'governing authority' is not defined, the word 'political subdivision' is defined. At that place the word 'political subdivision' is defined as, 'any county, city, *borough,* incorporated town, township, school district, vocational school, county institution district, and any authority, entity or body organized by the aforementioned.' With these definitions in mind and with the maximum statutory construction in mind that we're to give them [their] plain meaning where possible, this Court will now go on to discuss the policies of the Ethics Act and its interaction with [the] Election Code in order to arrive at its decision in this particular case.

### PUBLIC POLICY ARGUMENTS

"Much has been made of the fact that [Section 4 of] the Ethics Act ... was heavily amended in 1989 specifically at [Subsection 4(b)(3), 65 P.S. § 404(b)(3),] wherein the language was added that [the] 'failure to file a statement in accordance with the provisions of the Ethics Act, shall in addition to any other penalties, be a *fatal defect to a petition to appear on the ballot.*' However, it has not been adequately noted that at the same time as the amendments were made ... an additional amendment was made to the public purpose section of the Ethics Act in 1989.

"At that time, the legislature defined the public purpose of the Ethics Act under 65 P.S. § 401 ... as follows:

'Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than the compensation provided by law is a violation of that trust. *In order to strengthen the faith and confidence of the people of the state in their government, the legislature further declares that the people have a right to be assured that the financial interest of holders of or nominees of or candidates for public office do not conflict with the public trust. Because public confidence in government can best be sustained by assuring the impartiality and honesty of public officials, this Act shall be liberally construed*

*to promote the complete financial disclosure as specified in this Act. ...*'

[65 P.S. § 401(a) (emphasis added.) ]

"Looking at the stated purpose, which is to promote complete financial disclosure and interfacing this with definitions as stated above, it is apparent that the legislature intended that Statements of Financial Interest were required to be filed in order to insure the right of access and inspection by the public electorate prior to an election. We must then look at what the best vehicle for accomplishing this purpose would be. Whether filing at a borough building or allowing these Statements of Financial Interest to be carried around on the person of an incumbent office holder is proper. Whether this type of filing as opposed to placing the file in the business office of a government subdivision versus the person['s] private business office is a more appropriate place to file.

"In order for us to come to this determination, the Ethics Act explicitly gives us further guidance at [Section 4(e), 65 P.S. § 404(e) ]. At that point, the Ethics Act provides as follows:

'(e) all Statements of Financial Interest filed pursuant to the provisions of this Act, shall be made available for *public inspection* and *coping* during *regular office hours and copying facilities should be made available at a charge not to exceed total costs.*' [ (Emphasis added.) ]

"Reviewing this, it is clear that Ethics Act is providing for the filing of this documentation, so that it is made available for public inspection and even public photocopying if necessary during regular business hours. They were also making certain that these public offices provide copying facilities on a cost basis not a profit basis.

"When the Court reviews [65 P.S. § 401,] the amended public policy of the Act, when the Court looks at [65 P.S. § 404(b)(2)(3),] requiring public filings in order to run[,] and when the Court reviews 65 P.S. § 404(e)[,] regarding availability and access to these filings, it is forced to come to the conclusion that where practically it can be accomplished it was the intention of the legislature to

provide for filing in a venue of the local governmental or political subdivision so that the public could inspect and copy these documents during regular office hours. Further, this policy was to be encouraged by virtue of the fact that copying facilities were to be available to the public on a cost or actual charge basis and not a profit making basis.

"The fact that the legislature is providing the Statements of Financial Interest be accessible during regular office hours and be available for inspection and copying can lead only to the conclusion that as far as the policies of the Ethics Act are concerned, it was the intention of the legislature that these documents be filed in an area that has regular office hours accessible by the public for filing, reviewing, inspection and photocopying with copying facilities available at actual charge without profit. Those requirements of the Ethics Act would only be met with a filing in a municipal office building if one actually exists.

■ "Recall that the broad purpose of this Act is to promote confidence in government, the Act says that, '... public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this Act shall liberally be construed to promote complete financial disclosure as specified in this Act.' 65 P.S. § 401(a). When looking at the required office hours, the ability to file, to review inspect and copy, it is inescapable that a public filing is required rather than filing with a private individual who happens also to be an incumbent office holder.

■ "Now we are required to balance the public policy of the Ethics Act, against the public policy of the Election Code. While it is clear that the Ethics Act does not preempt [the] Election Code, [*Commonwealth v. Cresson*, 528 Pa. 339, 597 A.2d 1146, 1148–49 (1991)], since aspects of both the Ethics Act and the Election Code relate to the same subject matter, as an example in the requirements for the filing of nominating petitions and financial interest statements, these acts are *in pari materia* and must be construed together. 1 Pa.C.S.A. § 1932, *Cresson, supra* [597 A.2d at] 1149. Furthermore, as was stated earlier and is repeated in the case of

[*Phillips v. State Ethics Commission*, 79 Pa. Cmwlth. 491, 470 A.2d 659 (1984)], '[t]he Ethics Act being remedial legislation, is to be liberally construed.... Thus coverage under the Act should be broadly rather that narrowly determined[.] [*Id.* 470 A.2d at 661 (citation omitted)]. [C]onversely, exclusions under the Act should be narrowly rather that broadly determined.' Additionally, there [is] a plethora of cases that talk about the public policy of the Election Code. The public policy of the Election Code can be summarized quite fairly in the fact that the purpose of the Ethics Act may be to strengthen faith and confidence in the people of their state and in their state government, 65 P.S. § 401, however, it is also the public policy [of] the Election Code to encourage individuals to run for office and to give to the electorate the broadest possible spectrum of selection in casting their ballot. It is against the [backdrop] of the public policy of the Election Code, contrasted with the public policy of the Ethics Act, that this Court must decide whether [the] filling of the financial statements with an individual office holder is in compliance with both of these two codes.

*CONCLUSION*

"In reviewing the stipulated facts in these six cases it is apparent that all candidates earnestly endeavored to comply with the law. Their filings with the Lackawanna Board of Elections were timely. Their filings with the Borough Council Persons were timely.

"Regrettably, our legislature has seen fit by virtue of their 1989 amendments, 65 P.S. § 404(b)(3), to 'draw the line in the sand,' [and] the legislature has made it clear that if a filing is not properly made on the same day that the nominating petitions are to submitted, than that shall be a fatal defect to appearing on the ballot.

"Our narrow issue then becomes whether a timely filing with a borough official is sufficient to meet the requirements of the Ethics Act and sufficient to meet the requirements of the Election Code.

"After reviewing the legal arguments, the Court feels it necessary to address the heated contest as to whether [*In re Petition of*

*Cioppa,* 139 Pa.Cmwlth. 314, 590 A.2d 821 (1991), *rev'd per curiam,* 527 Pa. 284, 590 A.2d 752 (1991) (without opinion), *supplemented,* 533 Pa. 564, 626 A.2d 146 (1993),] is in fact binding precedent.

"It is apparent to this Court, that the Commonwealth Court Opinion was explicitly [reversed] by the Supreme Court in a per curiam order. Additionally, after their order the Supreme Court wrote an opinion, [reported at 533 Pa. 564, 626 A.2d 146,] [as] noted above.

"Because the Commonwealth Court case was explicitly [reversed] by the Supreme Court in its per curiam order and yet the Supreme Court opinion in the *Cioppa* case is a plurality opinion, this Court is of the opinion that neither the Commonwealth Court opinion nor the Supreme Court opinion offers binding precedent.[2] However, this Court also feels that both of these cases offer to this Court *significant guidance* that may assist us in the resolution of this case.

"First, factually, [i]f we allowed filing of ethics statements by incumbents running for office to be with themselves, the incumbent office holders immediately are given a substantial advantage over non-incumbent office holders because[,] while the opponent attempting to unseat an incumbent would for all practical purposes only have an option of filing in the public office of a local political subdivision, the incumbent would have the option of filing with themselves and/or with the local office of the political subdivision. This distinction and this advantage given to an incumbent [vis-a-vis] a non-incumbent challenger would, this Court believes, be constitutionally suspect since it does not afford the non-incumbent challenger the same protections that [an] incumbent would be afforded.

"Theoretically, the argument could be made that these filings could take place by a non-incumbent challenger with the incumbent that he is challenging, but for all practical purposes we know that it would be illogical to attempt to file with an incumbent opponent you are attempting to unseat.

"Additionally, if we allowed a statement of financial interest filed with an incumbent office holder to be treated as though it were filed with the governing authority within a political subdivision in which they are running, the practical necessities of the Ethics Act could not be carried out. Inspection[,] review [and] copying are all thwarted because the public does not know where to find the ethics statement in the first instance. By the same token, if we exclude the incumbent office holder from the possibility of carrying an ethics statement around in his pocket and calling it 'filed' we do not hamper the Election Code in any way. It appears to the Court that this choice is made for us. It is necessary to restrict filings to be with a public office. In the Commonwealth Court case of *Cioppa,* 139 Pa.Cmwlth. 314, 590 A.2d 821 (1991), the Commonwealth Court majority[,] which was later overturned, held that the financial statements should be filed with a governing authority and received by a subdivision secretary as opposed to an individual council person. They stated:

'While we agree there may be circumstances where a council member or township supervisor may receive the forms because of the *"practical necessity"* [Emphasis Added] of the way the borough or the township operates, political culture is not sufficient to determined who is the governing authority. Braddock Hills has an established a seat of government, a borough building with full time employees to serve as a locus of municipal activities, it is at that location where records are kept, papers are served and documents filed, including Statements of Financial Responsibility.... Because it is necessary for political subdivision to have order in the manner in which documents are filed unless there was a showing of "practical necessity" for documents to be received otherwise, a Statement of Finan-

---

**2.** We note that, contrary to this statement by Judge Minora, this Court's decision in *Cioppa* **does** have significant precedential value, and we refer to this Court's opinion in *In re Nominating*

*Petition of Capra,* —— A.2d —— (No. 832 C.D. 1997, filed April 22, 1997), which was filed contemporaneously with this opinion.

cial Interest is not filed until received by the office of the Borough Secretary.'

[*Cioppa*, 590 A.2d at 823 (footnote omitted)].

"As all parties are aware and is apparent in the Stipulations of Fact, the Borough of Dickson City has, in fact, a seat of government, a borough building with full time employees to serve as the locus of municipal activities. It is at that location where they keep their records, where papers are served in lawsuits, where documents are filed and Statements of Financial Responsibility should also be filed in accordance with [the] opinion in *Cioppa* by the Commonwealth Court.

"In the Supreme Court opinion with regard to the [*In re Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146 (1993)], Chief Justice Nix, in his plurality opinion, indicated that the Commonwealth Court decision was correct with respect to the filing with the borough's secretary and stated, 'hereafter, failure to file the requested Financial Interest Statement within the prescribed time, shall be fatal to a candidacy.' [*Cioppa*, 533 Pa. at 571, 626 A.2d at 149 (emphasis added)]. In that case which was factually on point, a councilman had been asked to receive a paper for filing, and the plurality opinion decided that the office holder's receipt was not a proper filing. Interestingly, a concurring opinion feels that it is a proper filing.

"When we need to review this type of matter, it is also beneficial to look at the [Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501,] for guidance. A review of the borough code shows that council can only act as a body[.] [*See* 53 P.S. §§ 46005–46006]. An individual council person is not a governing authority, an individual council person has no ability to act individually in the legislative function to bind the borough. Nowhere in the Borough Code, the Election Code or the Ethics Act is there a duty prescribed for an individual councilman to perform an independent act of receiving documentation and filings on behalf of the municipality within which he or she serves.

"A review of [the] definition section [for] the word[s] 'political' and 'subdivision' would indicate that the political subdivision in this case is actually the Borough of Dickson City. That is the body of land that has been subdivided into a separate municipality. Then a review of the dictionary definition of governing authority would indicate, when viewed within the context of the [B]orough [C]ode, that only where both the Mayor and Council are present and acting jointly at a meeting duly called and advertised, only in this instance are they collectively acting as a governing authority or a governing body. In that particular case, more likely than not they, the Council and the Mayor, acting as a governing authority at a duly convened meeting, could accept filings. Keep in mind that this would be a normal function of the borough taking place at the Borough building with all the representatives present that would constitute the governing body and would not be the actions of one individual acting on their own without statutory authorization.

"Furthermore, in order to insure that Statements of Financial Interest are subject to inspection, review and possible photocopying, it is incumbent upon this Court to find that these statements cannot be carried around on the person of an incumbent office holder or placed in a file in the business office of an incumbent office holder especially when that private business entity is located in a different political subdivision than the one in which the election contest is taking place.

"Recall that [Section 4(e) of] the Ethics Act, 65 P.S. § 404(e), provides that Statements of Financial Interest filed pursuant to the provisions of this Act are to be made available for public inspection and copying during regular business hours at copying facilities to be made available at a charge not to exceed actual costs.

"When Section 4(e) is read in conjunction with [Sections 4(b)(2)–(3)], it is apparent that the required public filings are necessary in order for [t]his Act to be effective. Furthermore, [this] reading [of] the Ethics Act [is] consistent with [and] does not violate the technicalities of the Election Code.

"While this Court may be of its own subjective opinion, that the 'fatal defect' language is too harsh, cruel and draconian, the fact of the matter is that this Court's subjective opinion is of no moment. We are obligated to read the two duly enacted legislative acts of elections and ethics in a manner that makes it consistent in the context in which they operate. This interpretation of the law regarding the Ethics Act requirement also functions in the context of the Election Code and in this instance also in the context of the [B]orough [C]ode. This Court's interpretation of the Ethics Act does not violate the letter of ... either the Election Code or the Borough Code.

"Furthermore, the amendments to the Ethics Act in 1989 were in response to the Supreme Court opinion in the *Baldwin* case, *supra*, that allowed requirements of filing to be met in spirit and not technically. It is, therefore, clear that the legislature intended and imposed a hyper-technical requirement [it] wished to be strictly enforced. Furthermore, these amendments are more recent than any amendments to the salient portions of the either the Borough Code or of the Election Code and as the most recent act of the legislature these revisions must be considered in reconciling these complicated areas of the law.

"If we take the position that the filing of Financial Disclosure Statements is intended to be a public filing, open for the public to see, to review and for the public to photocopy if necessary, how could delivery to an individual office holder be construed as a filing or as carrying out this intent? It is apparent that the purpose of this Ethics Acts requirement was to give the voter more information so that the public[,] in having greater knowledge[,] could exercise their right to vote in a more intelligent and informed fashion.

"Furthermore, this Court can fathom individual circumstances where a required filing with an incumbent office holder could totally violate the purposes of the Ethics Act. Hypothetically, how could a voter discover, review, inspect and perhaps, photocopy a document if it were being carried in an incumbent office holder's pocket or purse? In addition to that[,] when if ever would it be necessary to file it [with] the seat of government: days, week or months afterwards? The question once again arises if the legislature had as its purpose the intention of informing citizens and voters so they could make informed decisions at the ballot box by reviewing Statements of Financial Interest during regular office hours with copying facilities, how could Statements of Financial Interest being carried about by various incumbent office holders meet this requirement?

"What if an incumbent office holder filed financial statements with himself or herself? Even assuming it was done in a timely fashion and there was no deception in that regard and then the incumbent decided to go on a lengthy vacation? This Court is faced with a similar circumstance in another case where an incumbent office holder left for Florida for an extended vacation after the [purported] filings took place.

"It is important that the public know where they can go and that it is one location where records are kept, where papers are received, where papers are filed, where they are available for review, inspection and, if necessary, photocopying. As logic dictates that location has to be an established seat of government in a local, political subdivision where the building has full time employees to serve the public if such a facility exists and is available.

"At 53 P.S. § 46113, the Borough Code provides that the fiscal records, documents, minute books and records and documents of every borough shall be open to the inspection of any taxpayer therefore, at any reasonable time. Additionally, under the Borough Code at 53 P.S. § 45803, Certificates of Elections of all borough officials shall be filed with the Borough Secretary and preserved among the records of the Borough for a period of six years. The title of the staff person, either Council Secretary or Borough Secretary is of no moment. The key is the function that that person performs.

"Furthermore, the Borough Secretary is charged under the Borough Code with preserving the records and documents of the borough and having custody of the Corporate Seal. That same Secretary can provide Cer-

tified copies of any borough documents under the seal of the borough[,] and copies so certified are admissible in any Court of the Commonwealth. Interestingly, the Borough Code allows the borough council ... the power to create a Secretary at 53 P.S. § 46005[,] and Assistant Secretaries are also allowed 53 P.S. § 46112. This Court is mindful of the concurring opinion which states that a Borough Secretary is not a governing authority. This Court agrees with that concurring opinion and the Supreme Court opinion in *Cioppa;* however, the Borough Secretary, by virtue of her appointment by the governing authority of the political subdivisions wherein she sits has in fact delegated that the Secretary is to act as the agent for the governing authority. Remember, nowhere in the Borough Code is there authority for independent action by a *single* member of the legislative body which, along with the Mayor, composes the governing authority of the political subdivision authorized to perform these tasks. Nowhere in that code does it provide that a single member of the legislative body has any authority to act as the recipient for or on the behalf of the council as a whole or the borough for official filing. The Borough speaks to the public through its records, through documents that are filed properly in the municipal seat of government and not through documents that are filed through incumbent office holders.

Furthermore, the 'practical necessity' as discussed in the Commonwealth Court opinion of the petition of *Cioppa* does not exist since the facts that have been stipulated to indicate that the Borough of Dickson City has a seat of government, a borough building and full[-]time employees.

▉ The language of the Act is clear. It requires a filing with a local 'governing authority.' However, nowhere in the Ethics Acts is the term 'governing authority' defined. This deficiency leaves it up to this Court to determine whether the filing with an incumbent borough official when running in borough[-]wide contest is an adequate filing with a governing authority. The Court recognizes the necessity for a governing subdivision to have order in the manner in which its documents are filed. Further, the legisla-

ture was quite clear in inserting the word 'fatal defect' in order to overcome the Supreme Court's decision in [*Baldwin*]. However, the legislature has neglected to be equally clear in specifying whether filing in a municipal building or with an incumbent office holder should be an adequate filing for the purposes presented under the Act and under the circumstances presented in this particular case.

"It is obvious to the Court that the candidates sought to comply with the Act. They filed with the County Bureau of Elections, and their filings with the incumbent borough officials were in fact timely, as has been noted in the stipulated facts and the facts found by the Court. The law in Pennsylvania does not favor the forfeiture of a candidacy because it does not want to disenfranchise either the candidate or the voter. In this particular case, however, regrettably, because of the specific amendments by the legislature, this Court has no choice. For that reason the Court will hold that these six candidates' Statements of Financial Interest were improperly filed when they were presented to incumbent Dickson City council persons rather than presented to the clerical staff on duty during regular business hours at the borough Municipal Building.

"Thus this Court concludes that the Petitioner has sustained his burden of overcoming the presumptive validity of the nominating petitions that have been filed on behalf of the respondents in these six cases. With these standards in mind, this Court regrettably must therefore conclude that these six officials who have made timely filings with two different incumbent borough councilmen have not complied with the requirements of the Ethics Act by filing properly with the local governing authority as is required under [Sections 4(b)(2) and (3) of] the Ethics Act, [65 P.S. § 404(b)(2)–(3) ]. This Court restates its regret because it is this Court's personal feeling that we would rather not disenfranchise the candidates nor the voters from the broadest possible selection of the candidates running. As was stated in open Court, this being the end of basketball season, this is a lot like trying to win the cham-

pionship on a technical foul rather than taking the opposing team to the hoop in a spirited election contest. Unfortunately, you can win on a technical foul.

"However, with this Court's personal feelings aside, this Court is forced to conclude that all six potential candidates for municipal office in the Borough of Dickson City have failed to meet the requirements of the Ethics Act, 65 P.S. § 404(b)(3). Because [they] have failed to meet these standards, their failure results in a fatal defect to their being able to appear on the ballot. While election law policy would indicate that the power to vitiate the ballot for minor irregularities be used rather sparingly and only for compelling reasons, it is this Court['s] opinion that those compelling reasons have been defined for us by the legislature as ... the very punitive remedy of striking their candidacies from the ballot. It is this Court's opinion that because of the changes made in the 1989 Amendments to the Act, this Court is forced to conclude that the compelling reasons exist in this particular case, that there was not a timely filing by the candidates within the borough because they have not filed properly with the borough governing authority but rather with individual office holders...."

Order affirmed.

### ORDER

NOW, April 22, 1997, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.