359 A.2d 791

**In re Nomination Petition of Thomas
J. GALLAGHER.**

**Appeal of Diane PERKS (two cases).**

**In re Nomination Petition of David
G. BRISTOW.**

Supreme Court of Pennsylvania.

Argued March 11, 1976.

Decided July 6, 1976.

Stephen P. Gallagher, Philadelphia, for appellant.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

This appeal questioned the ruling of the Court of Common Pleas of Philadelphia County which dismissed appellant's timely objection to appellees' nomination petitions for the office of members of the ward executive committee of the Democratic party. After consideration of the arguments presented this Court concluded that the learned court below was in error and accordingly entered orders on March 12, 1976 reversing the orders of the hearing court and prevented the names of the appellees herein from appearing on the ballot for the said offices in the Primary Election which was held on April 27, 1976.[1]

Appellees, Thomas J. Gallagher and David G. Bristow, desirous of seeking the office of members of the ward executive committee, 42nd ward, 11th division, filed petitions to have their names placed on the ballot as candidates for the said offices.[2] On the form which was provided for this purpose, spaces appeared on the face for the signature, address, occupation and the date of signing for those qualified electors who wish to offer the name of the candidate to be placed upon the ballot. For the office of member of the ward executive committee, ten valid signatures were required. Act of 1937, June 3, P.L. 1333, art. IX, § 912(f); as amended, 1951, May 16,

1. Oral argument was specially listed and heard on March 11, 1976. To avoid any disruption of the primary election process we declined to withhold our decision to await the filing of this opinion. The orders were entered with a notation that this opinion would follow.

2. Each election division within a ward is represented in the ward executive committee by two members.

P.L. 302, § 1(f); 25 P.S. 2872(f). The dates during which these petitions were to be circulated and the signatures secured are also regulated by statute. Act of June 3, 1937, *supra* as amended at § 908, 25 P.S. 2868 (Supp. 1975–76).

When filed each petition contained 19 purported signatures on its face, nine names in excess of the number necessary to have the name of the candidate placed on the ballot. Appellant, Diane Perks, filed timely objections challenging 12 of the 19 signatures on each of the two petitions. After a hearing in the court below, ten signatures were ruled to be invalid on each petition, leaving a total of nine valid signatures on the face of each petition.[3] The court refused to strike the petitions but rather allowed the petitions to be amended by affixing the name of David G. Bristow on the face of both, concededly beyond the time for securing such signatures, and declared both petitions to be valid. After due consideration we are of the opinion that, that action was error and therefore reversed the order of the court below.

Section 977 of the Act, *supra,* as amended, 25 P.S. § 2937 (Supp.1975–76) provides that if a petition fails to contain a sufficient number of genuine signatures of electors qualified to sign, it should be set aside. Further, it is conceded that if the petition contained only nine valid signatures a hearing court would be powerless to permit the affixing of the tenth valid signature (by way of amendment) after the proscribed time had elapsed. Appellees and the hearing court attempted to skirt these two admitted principles by arguing that the petition did in fact contain a sufficient number of genuine signatures acquired within the designated period. It is asserted that Mr. Bristow's execution of the candidates' affidavit on the petition offering his name in nomination and his execution of the circulator's oath on the Gallagher petition also satisfied the requirement as one of the signers

---

3. The validity of this order is not questioned in this appeal.

offering the name of the candidate in nomination. In his opinion, the hearing court reasoned:

"We believe the amendment was entirely appropriate. The individual had already expressed by signature under oath, support for the candidacy. Signing on the reverse side of the sheet seems to us to be a mere mechanical declaration of what is already self-evident, i. e., the individual on or before the last day for filing the petition has signified in writing under oath his support for the nomination."

While we appreciate and share the hearing court's deep concern for the rights of those seeking public office, we cannot permit a resort to sophistry in an effort to avoid the clear mandates of the Election Code. The execution of the candidates' affidavit as required by Section 910 of the Act, supra, as amended, 25 P.S. 2870 (Supp.1975–76), can be interpreted as meaning only that which is averred in that affidavit. So too, the execution of the circulator's affidavit relates only to the averments set forth therein. Section 909 of the Act, supra, as amended, 25 P.S. 2869 (Supp.1975–76).

Section 907 of the Act supra, as amended, 25 P.S. 2867, (Supp.1975–76) specifically provides that the names of candidates for office of committee members may appear on the official primary ballot only upon the filing of separate nomination petitions in form prescribed by the Secretary of the Commonwealth. There has been no claim that the forms used were not those directed by the Secretary and we therefore conclude that the forms were in compliance with Section 907. The petitions contained 28 spaces for the signatures of electors petitioning the County Board of Elections to print the name of the candidate upon the primary ballot. Each petition also contained an affidavit of the candidate and an affidavit of the circulator. Most importantly, in bold print immediately above the spaces provided for the sig-

natures of the electors was the admonition, "10 Signatures Required."

"Thus, the legislature itself, as well as the Secretary of the Commonwealth recognized that signatures in three separate capacities would appear on nomination petitions. There is no suggestion in the Election Code or in the case law interpreting and applying the same that a single signature appearing in any one capacity may thereby be used interchangeably. It defies all logic, for example, to argue that Constance G. Milliken signed her petition as an elector but omitted to execute the candidate's affidavit, that such defect might be cured by considering her signature as an elector to be her signature as a candidate as well.

While aware that the Election Code is to be liberally construed so as not to deprive an individual of a right to run for office, or the voters the right to elect the candidate of their choice, [citation omitted], we believe the form of a nomination petition to be quite clear, and in order to be considered and counted as a petitioner-elector, such elector must sign in the place designated for such purpose by the Secretary of the Commonwealth."

*In re DiMarzio*, 65 D. & C.2d 477, 481–482 (1974) (Sugerman, J.).

Section 912(f) of the Act, supra, as amended, 25 P.S. 2872(f) unequivocally requires the validity of the petition to be dependent upon securing the signatures of at least ten registered and enrolled members of the proper party. Thus, the issue here is clearly distinguishable from the situation presented in *Wieskerger Appeal*, 447 Pa. 418, 290 A.2d 108 (1972). In that decision, we permitted the counting of 16 absentee ballots which were marked in colored ink not provided for in the Election Code. We did so, however, on the theory that the section therein involved was primarily concerned with preserving the anonymity of the vote and that the use of the red

and green ink on the ballots in that case did not in fact destroy the secrecy of those ballots. Section 912(f), however, in the clearest terms has set forth a legislative intention that a nomination petition is to be valid only if it contains the required number of qualified signatories.

Further, pursuant to Section 907, the Secretary of the Commonwealth designed a form which clearly provided for the affixing of the signatures of those offering the name in nomination of the face thereof. The directions for the completion of the form were clear and precise in terms easily understood by laymen. Compare, *In Re: Recount of Ballots*, 457 Pa. 279, 325 A.2d 303 (1974). Additionally, the fact that each petition was submitted with 19 purported signatures also suggests that appellees were fully aware of the ten signature requirement and knew the place on the form where those signatures were to be placed. Under all of the circumstances, we are satisfied that there is no justifiable reason to ignore the clear dictates of the statute.

Orders entered March 12, 1976.