498 Pa. 255 (1982)
445 A.2d 1208
COMMONWEALTH of Pennsylvania, STATE ETHICS COMMISSION, Appellee,
v.
William E. BALDWIN, et al.
Appeal of Marshall FRUMER, Catherine Masur, and Edward Thompson.
Supreme Court of Pennsylvania.
Argued April 22, 1982.
Decided May 28, 1982.
*256 James H. Stewart, Jr., Harrisburg, Michael Etkin, Philadelphia, for Marshall Frumer.
Stewart Magdule, Harrisburg, for Wm. E. Baldwin.
Anthony Vardaro, Meadville, for Julius Russell.
R. Bruce Manchester, Bellefonte, for Donald F. Heggenstaller, Sr.
Frank M. Jackson, Philadelphia, for Ann L. Moss.
*257 David Raker, Williamsport, for Bruce E. Waugh.
Sandra S. Christianson, Gen. Counsel, Asst. Atty. Gen., James J. Kutz, Deputy Atty. Gen., for State Ethics Com'n.
Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

OPINION
NIX, Justice.
The State Ethics Commission challenged the nomination petitions of thirteen prospective candidates[1] for the offices of State Senator and State Representative for their failure to file with the Commission financial interests statements as required by the State Ethics Act (Ethics Act). Act of October 4, 1978, P.L. 883, 65 P.S. § 404(b) (Supp. 1981-1982). The Ethics Act requires a financial interests statement to be filed prior to the filing of nomination petitions. These prospective candidates had failed to file financial interests statements with the Commission before the last day for filing nomination petitions on March 9, 1982.
The Commonwealth Court relying on In re Petition of Cianfrani, 467 Pa. 491, 359 A.2d 383 (1976) held that "[f]ailure to file such a statement prior to filing the affidavit *258 required with the nomination petition would clearly invalidate the affidavit and also, consequently, the nomination petition, thereby requiring that the candidate's name be removed from the ballot." On April 8, 1982, ____ Pa. Cmwlth. ____, 444 A.2d 767, an order was entered striking the names of eight of the prospective candidates including Marshall Frumer, Catherine Masur and Edward Thompson, the appellants in the instant case.
Section 4(b) of the Ethics Act provides:
Each candidate for public office shall file a Statement of Financial Interests for the preceding calendar year with the Commission prior to filing a petition to appear on the ballot for election as a public official. A petition to appear on the ballot shall not be accepted by an election official unless the petition includes the affidavit that the candidate has filed the required statement of financial interests with the Commission. 65 P.S. 404(b).
The provisions of Section 4(b) of the Ethics Act require that (1) a candidate for election must file a financial interests statement with the State Ethics Commission, (2) the financial interests statement must be filed with the State Ethics Commission prior to the filing of a petition to appear on the ballot for election and (3) an election official must reject a nomination petition which does not include an affidavit attesting to the fact that the candidate has filed the required financial interests statement with the State Ethics Commission. Although the nominating petitions' affidavits contained an attestation that a financial statement had previously been filed with the Commission[2] pursuant to section 4(b), such filings were not in fact made on or before the March 9, 1982 filing deadline.[3] The Commonwealth *259 Court found this to be a fatal defect which could not be cured by amendment. We are satisfied that a correct analysis of Section 4(b) does not reflect a legislative intent requiring the stilted and harsh ruling reached by the Commonwealth Court in this case.[4]
It is apparent from the stated purpose of the Ethics Code, see Section 1, 65 P.S. 401 (Supp. 1981-82), that the legislature intended a full financial disclosure by public officials and office holders to avoid conflicts of interest and to reaffirm the citizens confidence in the integrity of their public officials. Section 4(b) was the device designed to secure that information from those persons seeking public office. Section 4(d)[5] anticipates that Section 4(b) would not be all encompassing in assuring that everyone prior to entering into public office will have submitted the desired information and adds a further requirement to reach those public officials who have not complied up to that point in time with the disclosure requirement. It must be emphasized that Section 4(b) is only a means used by the legislature to reach a goal and not the goal itself. The objective was the disclosure of the financial activities of the candidate, the requirement to file an affidavit attesting to compliance with the disclosure requirements was the means chosen to achieve that objective. Clear thinking requires *260 that we do not exalt the means to an extent that the end is obscured.
To treat the affidavit attesting to financial disclosure as an appendage to the qualifications for office set forth in the Election Code creates a fiction that does a disservice to the legislative intention underlying the enactment of Section 4(b). Section 4(b) was not designed as positing a barrier to seeking public office, rather it was conceived as a way in which to obtain further information which could be available during the selection process. It cannot be presumed from the fact that the mechanical device used to obtain the information provides for its receipt prior to the filing of the nominating petition should necessarily require foreclosing access to the nomination process where the information is in fact received after the filing of the petition but is available for all of the purposes envisioned under the Ethics Act.
It is, of course, legitimate to argue that the development of a machinelike rule that forecloses access to the nomination process whenever there is non-compliance with the strict letter of the section, regardless of the reason for the non-compliance, will assist in obtaining the desired information. However, there is no basis for concluding that the legislature intended such a rule to implement its design in this area nor is there evidence that such a stringent approach is here necessary. Not only has there not been in this instance such a compelling necessity established for adopting such a per se rule, to do so would be in direct conflict with the well-established public policy of this jurisdiction to favor enfranchisement. In Re: Recount of Ballots, 457 Pa. 279, 325 A.2d 303 (1974); Mellody Appeals, 449 Pa. 386, 296 A.2d 782 (1972); Weiskerger Appeal, 447 Pa. 418, 290 A.2d 108 (1972); James Appeal, 377 Pa. 405, 105 A.2d 64 (1954).
It is significant to note that in spite of the Commonwealth Court's articulation of the intractable position that the failure to file the financial statement prior to executing and filing the affidavit invalidates the affidavit and in turn *261 invalidates the petition, that court nevertheless permitted persons who had failed to file the statement prior to filing the affidavit to remain on the ballot when in that court's judgment the excuse for the failure justified doing so. It is therefore evident, that although the Commonwealth Court articulated the view that a failure to file the financial statement in accordance with the Ethics Act prior to the filing of the affidavit would necessarily fatally taint the filing process, it did not strictly adhere to that position. The Commonwealth Court was correct in its perception that strict adherence to such a rule would work grave injustices. It, however, erred in its conclusion that the adoption of such a position was required in the first instance.
As stated, the Commonwealth Court was of the view that its formulation of the rule was compelled by our decision in Cianfrani, supra. This conclusion reflects a misperception of the principles articulated in Cianfrani, supra. An affidavit containing statements which are not consistent with fact is obviously a defective one. Where the misstatement was knowingly contrived, it becomes a false affidavit. In each of the thirteen instances presented to the court below, the affidavits were defective in the same respect, i.e., they attested to a filing that in fact had not occurred at the time of the attestation. In each case the device designed by the legislature to secure this information from this particular class of subjects had in the first instance been frustrated as a result of the defect. It is also equally true that in all of the cases there were no instances where a deliberate intent to deceive was found. In Cianfrani, we focused upon the deliberate and knowing effort to deceive that was apparent from the facts in that appeal. That concern is not here present.
Where there is a deliberate attempt to falsify the affidavit required by the Election Code, the significance of such an act transcends the particular situation and serves to undercut the integrity of the entire election process. As observed in Cianfrani, the legislature used the affidavit to reinforce the integrity of the election process.

*262 . . . our cases have made clear that the provisions of the election laws relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process.
Id., 467 Pa. at 494, 359 A.2d at 384.
While the Cianfrani ruling was required to deter deliberate attempts to frustrate the election process, there was no indication that the rationale of that decision should be applied where the misstatement was unintentional. The unstated reasoning of the Commonwealth Court is to create a distinction between the unintentional error that may have resulted from the carelessness or lack of due diligence on the part of the prospective candidate and that error that court deems to be a product of an honest mistake. The former category the Commonwealth Court chose to subject to the Cianfrani doctrine and the latter is excused. This is neither consistent with the teachings of Cianfrani nor required by the expressed purposes of the Ethics Act.
In the three appeals before us it is clear that there is an absence of any intent to deceive. Appellant Frumer stated the financial statement was mailed prior to the deadline of March 9th but not received by the Commission. Appellants Masur and Thompson testified they were not furnished financial interests statement forms with the packet of papers to be filed and did not know of the requirement. These explanations were not rejected by the court below. In addition, there is in this record substantial evidence suggesting a wide-spread uncertainty as to compliance with this requirement.[6] There was testimony that a number of persons attempted to file the financial statements with the County Board of Elections contemporaneously with the filing *263 of the nominating petitions and the financial statements were rejected by that body. The confusion was heightened by the fact that in the 1981 primary elections the Commission accepted late filing of the statements.
While these considerations cannot erase the fact that the petitions were defective when filed, they do, however, mitigate strongly against precluding amendment. The failure to have previously filed the statement under such a cloud of uncertainty does not present the type of error which requires finding it to be fatally defective. This is particularly true where the amendment permits the purposes of the Ethics Act to be fully realized.
Accordingly, an Order was entered on April 26, 1982, 497 Pa. 608-09, 443 A.2d 1141, allowing the names of the instant appellants to remain on the ballot.
NOTES
[1] The prospective candidates were: William E. Baldwin, candidate for state representative from the 125th District; Leo T. Forbidussi, candidate for state representative from the 36th District; Marshall Frumer, candidate for state representative from the 154th District; Donald F. Heggenstaller, Sr., candidate for state representative from the 171st District; Edward Manherz, candidate for state representative from the 111th District; Catherine Masur, candidate for state senator from the 42nd District; John T. Michaels, candidate for state representative from the 35th District; Ann L. Moss, candidate for state representative from the 197th District; Cleopatra Nelson, candidate for state representative from the 149th District; Julius Russell, candidate for state representative from the 6th District; Edward Thompson, candidate for state representative from the 39th District; and Bruce E. Waugh, candidate for state representative from the 83rd District. The Commission had also filed an objection to the nomination petitions of Ann Socie for state senator from the 34th District but that objection was discontinued after Ms. Socie withdrew her name from the ballot. Marshall Frumer, Catherine Masur and Edward Thompson appealed.
[2] The affidavit accompanying the petitions filed contained the following language:

Part C  Ethics Affidavit and I swear (or affirm) that I have filed a statement of financial interest for the preceding calendar year with the State Ethics Commission as required by Act No. 1978-170.
[3] Appellant Frumer offered testimony that his financial statement was mailed on March 2, 1982. This contention on Frumer's part as to a timely filing was rejected by the Commonwealth Court. That court concluded, "In order to be properly filed, a statement, if mailed, must be actually received by the Commission or the candidate must at least produce some form of documentation of the mailing. . . ." We need not consider this ruling in view of our disposition on other grounds.
[4] An additional question was raised as to the legal authority of the Ethics Commission to institute this action. We agree with the Commonwealth Court that the power to bring this suit fell within the implicit authority conferred to permit that body to carry out the stated purposes of the Ethics Act. See, e.g., Statutory Construction Act, Act of Dec. 6, 1972, P.L. 1339, No. 290, § 3, 1 P.S. § 1921 (Supp. 1981-82); see also Commonwealth Attorneys Act, Act of Oct. 15, 1980, P.L. 950, 71 P.S. § 732-204(c) and 732-403(a) (Supp. 1981-82).
[5] (d) No public official shall be allowed to take the oath of office or enter or continue upon his duties, nor shall he receive compensation from public funds, unless he has filed a statement of financial interests with the commission as required by this act.
[6] In its opinion the Commonwealth Court noted:

It is evident, however, that the system has not as yet been perfected and that the Commission still has room to improve a number of its procedures, most notably the contents of the instructions concerning methods for filing financial statements and the coordination of filing methods between the Commission and other election officials such as the Bureau of Elections of the Department of State and the boards of elections in the various counties.