In re the NOMINATION PETITION OF Robert McMONAGLE as Candidate for the Office of Supervisor of Middletown Township in the Municipal Primary in the Year 2001.

Appeal of Edward Poltonowicz,

In re the Nomination Petition of Philip P. Morganti as Candidate for the Office of Tax Collector of Middletown Township.

Appeal of Edward Poltonowicz.

In re the Nomination Petition of William Regan as Candidate for the Office of Auditor of Middletown Township.

Appeal of Edward Poltonowicz.

In re the Nomination Petition of Richard Paul Gennetti as Candidate for the Office of Supervisor of Middletown Township.

Appeal of Edward Poltonowicz.

In re Nomination Petition of Amy E. Coughenour.

Appeal of Amy E. Coughenour.

In re Nomination Petition for Vincenzo A. Cintorino, Candidate for Borough Council for North Wales Borough, Ward 2.

Appeal of Vincenzo A. Cintorino.

In re Nomination Petition for Justin Jewell, Candidate for Borough Council for North Wales Borough, Ward 2.

Appeal of Justin Jewell.

In re Petition of Mary Ann Roselli and John Krupinsky, to strike the Nomination Petition of John Flyte as a candidate for the Springbrook Township Board of Supervisors in the Democratic Primary, and Christopher Yev-

itz as a candidate for the Springbrook Township Board of Supervisors in the Republican Primary.

Appeal of Mary Ann Roselli.

Commonwealth Court of Pennsylvania.

Heard April 18, 2001.
Heard April 19, 2001.
Decided March 1, 2002.

Joshua D. Harvey and Larry Haft, Newtown, for appellant, E. Poltonowicz.

Donald J. McCue, Connellsville, for appellant, A. Coughenour.

Daniel H. O'Connell, Sr., North Wales, for appellants, V. Cintorino and J. Jewell.

John J. Minora, Scranton, for appellant, M. Roselli.

Richard S. Wasserbly, Doylestown, for appellees.

Mark F. Morrison, Uniontown, for appellee.

Brian E. Appel, Jenkintown, for appellees.

James J. Powell, III, Scranton, for appellees.

LEADBETTER, Judge.

The above-captioned election appeal cases [1] presented related issues with re-

---

1. These were: the appeal of Amy E. Coughenour (Coughenour case) from the order of the Court of Common Pleas of Fayette County setting aside her nomination petition and striking her name from the ballot for the office of District Justice in magisterial District 14–3–07; the consolidated appeals of Vincenzo A. Cintorino and Justin Jewell (Cintorino cases) from the orders of the Court of Common Pleas of Montgomery County striking

gard to the proper manner of filing candidates' statement of financial interests, specifically: (1) where the candidate is required to file his financial interests statement, (2) when the statement is timely filed, and (3) what, if any, circumstances may excuse a candidate's failure to file at the proper time and place. I entered a separate order in each group of consolidated cases, but issue a single opinion in order to explain the reasons for my decision in each case within the broader context of the underlying principles applicable to all.[2]

A candidate for local office is required to file a statement of financial interests under the Public Official and Employee Ethics Act, 65 Pa.C.S. §§ 1101–1113, and by the regulations of the State Ethics Commission, 51 Pa.Code § 15.3(b). Section 1104 of the Ethics Act directs, in pertinent part, that:

> Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election.

65 Pa.C.S. § 1104(b)(2). Similarly, the regulations direct:

> their nomination petitions for Council in North Wales Borough; the consolidated appeals of Edward Poltonowicz (Poltonowicz cases) from the order of the Court of Common Pleas of Bucks County dismissing his objections to the nominating petitions of four candidates for offices in Middletown Township, as follows: Robert McMonagle for Supervisor, Philip P. Morganti for Tax Collector, William Regan for Auditor and Richard Paul Gennetti for Supervisor; and the appeal of Mary Ann Roselli and John Krupinsky (Roselli cases) from the order of the Court of Common Pleas of Lackawanna County dismissing their objections to the nominating petitions of John

> A candidate for county and local public office shall file a Statement of Financial Interests with the governing authority of the political subdivision wherein the candidate is seeking office on or before the last day for filing a petition to appear on the ballot and a copy of the Statement shall be appended to the petition.

51 Pa.Code § 15.3(b). In each of the cases presented here, the final day for filing the financial interests statement was March 6, 2001.

■ A candidate's failure to file a financial interests statement in the proper manner and in the prescribed time with the local governing authority is a fatal defect requiring the striking of that candidate from the ballot. *See Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146 (1993). This has been the rule since 1989, when the legislature added Section 4(b)(3) to the version of the Ethics Act[3] then in effect, evidently in response to the decision in *State Ethics Commission v. Baldwin*, 498 Pa. 255, 445 A.2d 1208 (1982), in which our Supreme Court had held that untimely filing was not automatically fatal. The 1998 codification of the Ethics Act reiterates the rule of fatality, as follows, "Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the bal-

Flyte and Christopher Yevitz for Supervisor in Springbrook Township.

**2.** As noted above, several of the cases were already consolidated at the time of argument. The court has not ordered additional consolidation.

**3.** The Public Official and Employee Ethics Act, Act of October 4, 1978, P.L. 883, § 4, *as reenacted and amended* by Act of June 26, 1989, P.L. 26. The Act of October 4, 1978 was repealed in 1998 and replaced by 65 Pa.C.S. §§ 1101–1113.

lot." 65 Pa.C.S. § 1104(b)(3). In enacting the Ethics Act, our legislature's stated purpose was to provide clear guidelines designed to promote complete and timely financial disclosure in order to "strengthen the faith and confidence of the people ... by assuring impartiality and honesty of public officials." *See* 65 Pa.C.S. § 1101.1(a). Based upon the expectation that compliance with the filing rules was a straightforward matter, the fatality rule served the purpose of promoting public confidence by assuring that the rules applicable to all would not be waived in favor of the few.

Nonetheless, compliance with the filing rules is not always so simple as the General Assembly envisioned. For instance, the Ethics Act does not define "file" or "governing authority," and thus fails to provide much needed clarity, both for putative candidates and for local officials who must establish a mechanism for accepting the filings. In *In re Capra*, 693 A.2d 647 (Pa.Cmwlth.1997), a panel of this court recognized that candidates throughout this Commonwealth are confronted by a vast diversity of local governments. 693 A.2d at 651 n. 7. Political subdivisions differ as to type, i.e., school district, township, city, county, and as to size, from those large enough to maintain a multitude of offices for various government functions down to those so small that government offices are not always open during regular business hours. *Id.* The local requirements as to how and with whom the candidate must file his financial interests statement may depend upon the nature of the local subdivision:

> In large political subdivisions, the issue becomes out of a multitude of offices it maintains, where do you file, e.g., the Mayor or Council or the Controller. However, in small [or rural] political subdivisions, but by far the most numer-

ous, the issue is not what office but how do you file it.

*Id. citing Petition of Cioppa,* 139 Pa. Cmwlth. 314, 590 A.2d 821, 823 n. 2 (1991). Thus, while we acknowledge our obligation to enforce the fatality rule, our interpretation of these rules must, to some extent, be tempered by the well established policy that favors the preservation, where possible, of a candidate's right to run for office and does not limit unnecessarily our citizens' electoral choices. *Cioppa,* 533 Pa. at 569, 626 A.2d at 148; *In re Olshefski,* 692 A.2d 1168 (Pa.Cmwlth.1997). With these principles in mind, we turn to specific cases.

In *Olshefski,* we concluded generally that, "[W]here practically it can be accomplished, it was the intention of the legislature to provide for filing in a venue of the local governmental or political subdivision so that the public could inspect and copy these documents during regular office hours." 692 A.2d at 1173. Based upon this conclusion, we held in *Olshefski* that a candidate's statement of financial interest is not properly filed with the governing authority when it is handed informally to incumbent local officials rather than delivered to the regular place of government business. *Id.* at 1177. This holding is directly on point and, along with *Capra* and *Cioppa,* controls the decision in the Cintorino cases.

■ On March 2, Vincenzo Cintorino and Justin Jewell, both seeking the Republican nomination as candidates for the Borough Council of North Wales, handed their statements to the incumbent Borough Council President, Daniel O'Connell. O'Connell placed the candidates' statements in the appropriate file at the borough hall on March 13. Following a hearing on objector's request to strike the nominating petitions, common pleas correctly determined that the statements

were not filed until they were placed in the borough's files and, therefore, struck the nominating petitions as untimely. Cintorino and Jewell appealed. The Cintorino candidates did exactly what this court in *Olshefski* and *Capra* and our Supreme Court in *Cioppa* had previously declared improper: they handed their statements to an incumbent municipal official, who delivered the statements to the borough office after the deadline. For this reason, their nomination petitions were properly struck.

■ Like the Cintorino candidates, Coughenour mistakenly filed in the wrong place, and the error was not corrected until after the deadline. On February 28, Amy E. Coughenour, seeking both the Democratic and Republican nomination for District Justice for Magisterial District 14–3–07, filed her financial interests statement only in the municipal office of Bullskin Township. Bullskin Township is one of three townships forming the magisterial district and the township in which the district justice office is located. On March 8, Coughenour filed her financial interests statement with the clerk at the Fayette County Commissioner's office. After a hearing on objections, common pleas determined that Coughenour was required to timely file her statement in the county commissioner's office, as the governing authority of the political subdivision in which she sought elective office. Because Coughenour filed her statement with the county two days late, the court struck her nominating petition. Coughenour appealed.[4]

The Coughenour case is somewhat more difficult than Cintorino because there do not appear to be any published decisions or regulations defining the "political subdivision wherein [a] candidate [for district justice] is seeking office." Pursuant to 42 Pa.C.S. § 3131, district justices are to be chosen by the electors of the respective districts in which they serve. The magisterial district is not generally coterminous with a single political subdivision, as that term is defined in the Ethics Act.[5] In Coughenour's case, the magisterial district covers three townships. I agree with common pleas that the county in which those three townships are located is the political subdivision, as that term is defined in the Ethics Act, where Coughenour sought to be a candidate and was required to file her financial interests statement. Even if that were subject to doubt, however, filing in only *one* of the three townships contained within the district was inadequate. Although the result is harsh, Section 1104(b)(3) leaves the courts no room for excusing such mistakes.

■ The Roselli cases raise the issue of whether statements will be deemed timely filed where the candidates' reasonable and timely attempts to file were frustrated by unreasonable and extraordinary official roadblocks. The candidates, both seeking election to the Springbrook Township Board of Supervisors, attempted to timely file their financial interest statements in the township office but were unable to do so because the office was closed on March 5 and 6. In the first case, Christopher

---

4. Common pleas properly rejected Coughenour's contention that the objections to her nominating petition should be dismissed because they were not presented to the court within seven days, as required under Section 977 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937. Timely filing of the objection petition on March 13 constituted "timely presentation to the court" as required under Section 977.

5. The Ethics Act defines "political subdivision" as follows: "Any county, city, borough, incorporated town, township, school district, vocational school, county institution district, and any authority, entity or body organized by the aforementioned." 65 Pa.C.S. § 1102.

Yevitz, the Democratic nominee, made five separate trips to the township building on March 6 but found the building closed each time. There was no mailbox or delivery place where he could deposit his statement and no directions as to an alternative place for filing. After contacting the Lackawanna County Board of Elections and receiving instructions to mail the statement, Yevitz placed his statement in an envelope addressed to the township building and put it in a U.S. postal service mailbox at approximately 5:00 p.m. on March 6. In the second case, John Flyte, the Republican nominee, handed his statement to Mary Ann Smith before he traveled out of town for the week of March 5. Flyte instructed Smith to file the statement in the township office by March 6 and, in accordance with these instructions, Smith made two trips to the township building on the morning of March 6 but found the building closed. Thereafter, Smith reported to her job at the regional office of State Representative James Wansacz. Shortly after arriving there, she placed Flyte's statement in an envelope addressed to the township office and, at 12:13 p.m., handed it to the U.S. mail carrier who regularly retrieved the daily office mail. The envelopes containing statements from Yevitz and Flyte were postmarked on March 7. Objections to Yevitz's nomination petition were filed by Mary Ann Roselli, the secretary for the township, who also sought the Democratic nomination as candidate for supervisor. Objections to Flyte's nomination petition were filed by John Krupinsky, who sought the Republican nomination as a candidate for supervisor. The objections were heard by common pleas and denied. Common pleas found that the protocol utilized by Roselli, as township secretary, requiring candidates to seek her out at her part time job or her home in order to deliver their financial interest statements thwarted the good faith attempts by Yevitz and Flyte to file their statements on time. Roselli and Krupinsky appealed.

These cases illustrate the concern expressed by the courts in *Cioppa* and *Capra* regarding the impediments to filing a financial interests statement in some of the Commonwealth's smaller municipalities. Candidates for the township's board of supervisors, in seeking to comply with the filing requirements, found themselves confronted by the local custom of conducting municipal business with the township's secretary in an ad hoc manner wherever she might be found. The township building was not regularly open during business hours. Persons needing to conduct business with the township or communicate with Ms. Roselli generally sought her out at the part time job she performed for a local oil company, contacted her at her home, or approached her if they saw her out and about.

Two candidates, Alfred Ankerway and Michael Grady, whose nomination petitions were not challenged, testified that they also tried and were unable to deliver their statements at the township building on March 6. After attempting to file at the township building, they happened upon Roselli while she was performing a personal errand and handed their statements to her while she sat in her car. They insisted Roselli take the forms despite her advice that the due date was May 1. Ankerway and Grady further testified that they obtained from her a written acknowledgement of acceptance because they had previously experienced problems filing official forms. A third candidate, Mauri Kelly Tomko, whose nomination petition was not challenged, testified that she deposited her statement in Roselli's home mailbox on March 6, despite having been told by Roselli that May 1 was the deadline for filing.

The situation faced by candidates in Springbrook Township mandates an excep-

tion to the fatality rule. Requiring that candidates be stricken from the ballot for any deviation from filing in the proper time and place presupposes that assuring strict compliance is within the candidates' control. In Springbrook Township, it was not. First, filing in the regular place of government business as required by *Olshefski* was impossible, because the township building was not open. While small municipalities have some flexibility to devise alternate procedures—*Olshefski* specifically mandates filing at the place of government only "where practically it can be accomplished"—the filing procedure utilized in Springbrook Township was entirely unacceptable. While some local residents knew from past experience that the way to file papers was to take them to Ms. Roselli at her home or office, this information was not publicized in any way and an outsider could hardly be expected to guess it. Even those with insider knowledge had some difficulty locating Roselli, and if they succeeded, no mechanism was in place to document the time she received the papers; candidates were left with only the hope that once she was given their documents, she would file them in a timely manner. Making this situation even more troublesome is the fact that Roselli was herself a candidate and gave other candidates misinformation about the filing deadline.

On March 6, the last day for filing, Flyte and Yevitz did everything they reasonably could do to comply with the filing requirement. Their efforts were impeded by a local procedure which might most favorably be characterized as whimsical, and which more darkly could be considered to have been sabotaged by the township secretary to enhance her own candidacy. To apply the fatality rule under such circumstances would subvert the very purpose of the Ethics Act to promote confidence in the electoral system and public officials. I

do not believe the legislature intended such an absurd result. Accordingly, I believe common pleas properly refused to strike the candidates' nominating petitions.

The Poltonowicz cases concern whether timely filing is established by a U.S. postal service postmark. Robert McMonagle, Paul Gennetti, Philip P. Morganti and William Regan sought the Democratic nomination for election to local offices in Middletown Township, Bucks County. Worried that a predicted major snowstorm would hamper their ability to hand deliver their financial interest statements to the township offices by the deadline of March 6, they placed the statements into the mail on Sunday, March 4. (In fact, the snowstorm caused the township building to close at 1:00 P.M. on March 5, and hand filing would have been impossible for the balance of that day.) Mr. McMonagle gathered all four statements in one envelope addressed to the secretary of the township manager and mailed it at the Langhorne Post Office, which postmarked the envelope "P.M., 04 Mar, 2001." The statements bear a date stamp indicating receipt by the township on March 8. Testimony reflected that the mail was delivered to the township building in a plastic corrugated bin, which the mailman would take to a cashier window next to or in the Utility Department. One of the part time cashiers who worked for that department would sort the mail and deliver it to the various offices within the township building. If one of the part time cashiers was not present, the mailman would leave the mail in the plastic bin, where it would sit in a public hallway until someone came and sorted it. That part of the mail delivered to the township manager's office would be placed on the desk of his administrative assistant, Suzanne Dillon, who would date stamp it at the time she opened it. Two photographs of Ms. Dil-

lon's desk, overburdened with a great clutter of paperwork, were introduced into evidence with testimony that the photos "pretty much represent[ed]" the way the desk looked in March of 2001. Edward Poltonowicz filed objections to the candidacy of McMonagle and the others whose financial interests statements were stamped received on March 8. Common pleas determined that timely mailing, proven by the postmark, constituted timely filing and dismissed the objection petitions. Poltonowicz appealed.

In holding that timely filing is established by a postmark, common pleas relied upon *State Ethics Commission v. Baldwin*, 66 Pa.Cmwlth. 40, 444 A.2d 767 (1982), rev'd on other grounds, 498 Pa. 255, 445 A.2d 1208 (1982). In *Baldwin*, this court stated:

> In order to be properly filed, a statement, if mailed, must be actually received by the Commission or the candidate must at least produce some form of documentation of the mailing, such as a signed return receipt, in order to establish not only the date of mailing, but also the correctness of the address used. We acknowledge that Commission regulations provide that a statement that is mailed before the filing deadline but is received by the Commission after that deadline will be considered to have been filed as of the date of the postmark. 51 Pa.Code § 4.6.

444 A.2d at 771.

Although I agree with the result reached by common pleas, I do not find *Baldwin* applicable. The *Baldwin* court's statement was based upon a Commission regulation that was repealed in 1993 and, in any case, would not have applied to candidates for local office who must file with the local governing authority. Current commission regulations require actual receipt, by defining "filed" as papers "physically received at the Commission Office, whether delivered by United States mail, express carrier, hand delivered or by Facsimile Service (FAX)." 51 Pa.Code § 11.1.

■ Nonetheless, although the current regulation dates filings with the Commission by actual receipt, it like its predecessor applies only to statewide candidates, and for good reason. Filing with a statewide commission open for business during regular hours and equally available to all candidates presents a far different circumstance than those now before the court. The vagaries of filing procedures in smaller communities strongly support the advisability, if not necessity, of allowing a postmark to fix the date of filings with local government authorities. As both the Roselli and Poltonowicz cases graphically illustrate, mailing may be the only mechanism whereby a candidate can assure that due diligence on his part will actually result in timely filing. As such a rule is prohibited neither by the Act nor any applicable regulation, I find that official documentation of the date of mailing such as a postmark or postal receipt will suffice to fix the date of filing financial interests statements with local governments. Accordingly, the objections filed in the Poltonowicz cases were properly dismissed.

### ORDER

AND NOW, this 20th day of April, 2001, the orders of the Court of Common Pleas of Bucks County in the above captioned cases are hereby AFFIRMED. An opinion will follow.

### ORDER

AND NOW, this 20th day of April, 2001, the order of the Court of Common Pleas of Fayette County in the above captioned case is hereby AFFIRMED. An opinion will follow.

## ORDER

AND NOW, this 20th day of April, 2001, the orders of the Court of Common Pleas of Montgomery County in the above captioned cases are hereby AFFIRMED. An opinion will follow.

## ORDER

AND NOW, this 20th day of April, 2001, the order of the Court of Common Pleas of Lackawanna County in the above captioned case is hereby AFFIRMED. An opinion will follow.