In the Matter of the NOMINATION PETITION OF Kerry BENNINGHOFF, (Republican) Candidate for Representative in the General Assembly from the 171st Legislative District.

Paula F. Smith, Petitioner.

Commonwealth Court of Pennsylvania.

Heard March 17, 2004.

Decided March 23, 2004.

As Amended May 10, 2004.

John J. Connelly, Jr., Hershey, for petitioner.

Lawrence J. Tabas and Dorothy M. Claeys, Philadelphia, for respondents.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a petition to set aside the nomination petition of Kerry Benninghoff (Benninghoff), the Republican Candidate for the Office of Representative in the General Assembly from the 171st Legislative District filed by Paula F. Smith (Smith). Smith is a registered Republican and a qualified elector of the 171st Legislative District, Centre County, Pennsylvania.

Benninghoff filed a nomination petition with the Office of the Secretary of the Commonwealth on February 17, 2004, for the Office of Representative in the General Assembly from the 171st Legislative District as a candidate for the nomination of the Republican Party in the General Primary scheduled for Tuesday, April 27, 2004. Along with the nomination petition, Benninghoff also filed a Statement of Financial Interests (Financial Statement) as required under Section 1104 of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1104(b)(2), for the year 2003. On the Financial Statement, though, at Blocks 4 and 5, he did fill in that he was the current State Representative from the 171st Legislative District.

Smith contends that Benninghoff failed to properly execute that Financial Statement because in Block 10, he did not list a direct source of income from his current employment as a State Representative from the 171st Legislative District as mandated by 65 Pa.C.S. § 1105(b)(5). As such, Smith argues that because Benninghoff's nomination petition omitted that information, it is fatally defective and should be set aside.

The sole issue before this Court is whether Benninghoff's name must be stricken from the ballot because the Financial Statement he filed with the Secretary of the Commonwealth was incomplete or inaccurate as he failed to list any income from his position as State Representative.[1]

1. The dissent advances the position that "the Ethic's Commission, not the court, has been charged with the initial responsibility as to whether a Financial Statement is deficient,

Section 1105(b)(5) of the Ethics Act provides the following regarding the information that must be provided on the Financial Statement: [2]

and, if so, what is the appropriate response" and that the "doctrine of primary jurisdiction" is implicated here. In advancing that position, the dissent does not consider that:

- 42 Pa.C.S. § 764(2) states that "[t]he Commonwealth Court shall have exclusive original jurisdiction of:
 (2) All matters arising in the Office of the Secretary of the Commonwealth relating to Statewide office, except nomination and election contests within the jurisdiction of another tribunal."
 There is no dispute that this is a statewide office and that the propriety of the nomination petition is at issue.
- Under the dissent's scheme, the Ethics Commission would have to review the petition, give a full blown hearing to the candidate, render a decision and file a complaint in this court to remove the candidate within seven days. Besides the impracticability of such a scheme given the time constraints, nothing in 65 Pa.C.S. § 1107 gives the Ethics Commission the power to file a petition to remove candidates from the ballot for filing a defective petition or as a penalty under 65 Pa.C.S. § 1109 that it can impose. It simply has been given no power, as the dissent suggests, to act as an arbiter as to what is a fatal flaw in the filing of a Statement of Financial Interest.
- The doctrine of primary jurisdiction does not mean that the courts do not have jurisdiction, only that they will defer to the agency. "Primary jurisdiction" arises in situations where the original jurisdiction of the court is being invoked to decide the merits of the controversy: the facts, the law and the relief. Rather than exercising its own jurisdiction to entertain the action to decide one of the relevant issues or to entertain the action at all, the court declines jurisdiction because it is proper to defer to administrative agency jurisdiction. Once the court properly refers a matter to an agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels), and is not subject to collateral attack in the pending court proceeding. *Elkin v. Bell Telephone of Pa.*, 491 Pa. 123, 420 A.2d 371 (1980). Even if we wanted to, we could not defer to the agency because, as stated, with challenges to nomination petitions for members of the General Assembly, we have sole jurisdiction under 42 Pa.C.S. § 764(2).

- *65 Pa.C.S. § 1104(b)*(3) which, to reiterate, provides that "[n]o petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot." By making it appended to the nomination petition and filed with the Secretary of the Commonwealth, it makes it part of the election process and failure to file a statement in accordance with this Chapter, by law, makes it a fatal defect. The dissent would, in effect, read this out of the Act.
- Not one line in any brief contends that we do not have jurisdiction, that the courts have consistently exercised jurisdiction over challenging nomination petitions, and that the General Assembly was aware of that when it amended 65 Pa.C.S. § 1104(b) to make defects a fatal defect. *See e.g. Baldwin; Cioppa; Anastasio,* not to mention all the cases that this court has removed from the ballot set forth in footnote 2.

2. Recently, in *In re Canvass of Absentee Ballots of November 4, 2003 General Election,* 71–72 WAP 2003, 843 A.2d 1223, 1230–31, 2004 WL 421942, *5, our Supreme Court reiterated that:

[T]he polestar of statutory construction is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a) (court's sole objective in construing or interpreting a statute remains to "ascertain and effectuate the intention of the General Assembly"); *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.),* [575 Pa.66,] 834 A.2d 524, 531 (Pa.2003). "Generally speaking, the best indication of legislative intent is the plain language of a statute." [*Com. v.*] *Gilmour Manufacturing,* [573 Pa. 143,] 822 A.2d [676] at 679.... The Act further provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under

(b) **Required information.** The statement shall include the following information for the prior calendar year with regard to the person required to file the statement:

(5) The name and address of *any direct or indirect source of income totaling in the aggregate of $1,300 or more.* However, this provision shall not be construed to require the divulgence of confidential information protected by statute or existing professional codes of ethics or common law privileges. (Emphasis added.)

Additionally, on the back of the Financial Statement, the following instructions are provided for Block 10:

*DIRECT OR INDIRECT SOURCES OF INCOME:* This block contains the name and address of **each source of income of $1,300.00 or more** of gross income. List the name and address of all *employers* (including governmental bodies). Also, include the source and address, not the dollar amount, of any payment, fee, salary, expense, allowance, forbearance, forgiveness, interest income, dividend, royalty, rental income, capital gain, reward, severance payment, prize winning, and tax exempt income. DO NOT INCLUDE: gifts, governmentally mandated payments; or retirement, pension or annuity payments funded totally by contributions of the person filing this form. If you did not receive any reportable income then

check "NONE." (Emphasis in bold added.)

Section 1104(b)(3) of the Ethics Act provides that "[f]ailure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot."

■ Benninghoff alleges that even though he did list his source of income, he did not have to provide the required information because the information requested was of public record. While that may be true, no such exception has been carved out by the General Assembly. In *In re Nomination Petition of Anastasio*, 820 A.2d 880 (Pa.Cmwlth.), *affirmed per curiam*, 573 Pa. 512, 827 A.2d 373 (2003), we set aside the nomination petition of a candidate for Philadelphia City Council who improperly filled out the Financial Statement in accordance with the provisions of the Ethics Act. We stated:

[T]he Act pertains to ethics and is to be liberally construed to promote complete financial disclosure. 65 Pa.C.S. § 1101.1. Anastasio relies on the liberal construction of the Election Code to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice. However, it is the Ethics Act in Title 65 that is dispositive here. Thus, we decline to interpret the Act to allow errors of omission.

*Id.* at 881. In *Anastasio*, we went on to note that 65 Pa.C.S. § 1104(b)(3) requires

---

the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b); .... Under Section 1921(c), it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Id. Consistently with the Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when

there is an ambiguity. [Citations omitted]. **Finally, all things being equal, the law will be construed liberally in favor of the right to vote but, at the same time, we cannot ignore the clear mandates of the Election Code.** See *In re Nomination Petition of Gallagher*, 468 Pa. 19, 359 A.2d 791, 792 (1976) ("we cannot permit a resort to sophistry in an effort to avoid the clear mandates of the Election Code." (Emphasis added)).

the filing of a statement "in accordance with the provisions of this chapter." These provisions include 65 Pa.C.S. § 1105(b)(5), requiring the inclusion of any direct or indirect source of income of $1,300 or more. Because the financial statement failed to include such information "in accordance with the provisions of this chapter," we concluded that the petition must be set aside. We also cited *In re Nomination Petition of McMonagle*, 793 A.2d 174 (Pa.Cmwlth.2002), for the proposition that the fatality rule in the Ethics Act serves the purpose of promoting public confidence by assuring that the rules applicable to all would not be waived in favor of a few. Because Benninghoff failed to provide the name and address of the source of his income as State Representative as required, that failure was an omission that was a fatal defect to his nomination petition.

Moreover, if we were to adopt Benninghoff's reasoning, that would open up the Act to far more exceptions to reporting of income on the Financial Statement. For example, if a mayor of a city running for the General Assembly denominates his/her status in Blocks 4 and 5, but fails to list his/her income in Block 10 of the Financial Statement, or if a well-known private individual, such as a news anchor, similarly lists his/her occupation and fails to list that television station as a source of income, each could make a similar argument under the Act that it makes no sense to remove him/her from the ballot.[3]

While we agree with Benninghoff that we can infer that he, and under our example, the mayor and the news anchor, by listing their titles and for whom they work, receive income from those sources, the technical requirement of the Ethics Act does not relieve them of listing their sources of income. Recently, in *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 71–72 WAP 2003, 843 A.2d 1223, 2004 WL 421942 (Pa. 2004), what was at issue was the delivery of absentee ballots by third parties. In that case, the Allegheny County Board of Elections, by formal action, authorized the delivery of absentee ballots by third parties to the Election Department, even though the only methods authorized under the Election Code were delivery by the voter or by mail. Even though it was conceded that there was no fraud and that application of the technical requirements

3. In *Anastasio*, we stated that "section 1104(b)(3) has real teeth and is quite harsh in its scheme." 820 A.2d at 881. In a footnote to that statement, we noted that the purpose behind the fatality rule was set forth in *"In re Nomination Petition of McMonagle*, 793 A.2d 174 (Pa.Cmwlth.2002) (stating that the fatality rule serves the purpose of promoting public confidence by assuring that the rules applicable to all would not be waived in favor of a few)." *Id*. Moreover, if we were to make a limited exception in this case, it would be at variance with the outcome of other cases decided in the past several weeks. *See In re Mahoney*, No. 148 M.D.2004 (Pa.Cmwlth., Filed March 17, 2004) (Judge Cohn) (nomination petition set aside where candidate failed to state in Blocks 3, 4, 5, and 6 his elected position as Jury Commissioner for Fayette County in his statement of financial interest although he listed that position as a source of income on Block 10); *In re Gainey*, No. 134 M.D.2004 (Pa.Cmwlth., Filed March 11, 2004) (Judge Pellegrini) (nomination petition set aside where candidate failed to state income from City of Pittsburgh as Manager of Special Projects although candidate was confused about the requisites of the statement of financial interest); *In re Grisafi*, 122 M.D.2004 (Pa.Cmwlth., Filed March 11, 2004) (Judge Simpson) (nomination petition set aside where candidate failed to state income from playing in a band on his statement of financial interest); *In re Yarnell*, 143 M.D.2004 (Pa.Cmwlth., Filed March 5, 2004) (Judge Feudale) (nomination petition set aside where candidate listed "none" as income on the statement of financial interest even though candidate had income).

for delivery would disenfranchise voters who followed the Board's instructions, our Supreme Court struck the votes otherwise properly cast, stating:

> Our precedent is clear: we cannot simply ignore substantive provisions of the Election Code. See In re Nomination of Gallagher, supra. [468 Pa. 19, 359 A.2d 791] We recognize that the Board of Elections' instructions may have misled some absentee voters. But so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed—particularly where, as here, they are designed to reduce fraud. See Appeal of James, 377 Pa. 405, 105 A.2d [64] at 65 (election law will be strictly enforced to prevent fraud). (Footnote omitted.)

*See also In re Nomination of Flaherty,* 564 Pa. 671, 770 A.2d 327 (2002).

While, in this case, secrecy of the ballot and the right of voters to vote for candidates are not at issue, just the opposite the right of a person to stand for election and the right of the public to know about the sources of his income nonetheless, *In re Canvass of Absentee Ballots,* is instructive. Like *In re Canvass of Absentee Ballots,* (where no harm would be done to the purpose behind the provision of the Election Code by counting the challenged votes), there would be no harm to the public to place Benninghoff's name on the ballot because his income as a State Representative could be surmised; yet, our Supreme Court has instructed us that we must strictly apply the requirements even where there would be no harm because behind those "technicalities" are important policy considerations. The General Assembly also emphasized those policy considerations by providing that those requirements must be strictly complied with when it amended the Ethics Act to re-

spond to courts not striking candidates who failed to comply with this provision by providing that "failure to file the [financial interests] statement in accordance with the provisions of this act shall ... be a fatal defect to a petition to appear on the ballot." 65 Pa.C.S. § 1104(b)(3).

 Even if his Financial Statement is deficient, Benninghoff then contends that he should be allowed to amend it to correct any omission or errors. He argues that the Ethics Act does not preempt the Election Code, *Commonwealth v. Cresson,* 528 Pa. 339, 597 A.2d 1146 (1991), because aspects of both relate to the filing of the Financial Statement, and therefore, they must be read *in pari materia* and construed together. *Cresson;* 1 Pa.C.S. § 1932. He further argues that under Section 9 of the Election Code, 25 P.S. § 2937, if an objection is made relating to a material error or defect that is apparent on the face of the papers accompanying the nomination petition, including the Financial Statement, the court may, in its discretion, permit an amendment to that document. Because the purpose of the Election Code is to "encourage individuals to run for office and to give the electorate the broadest possible spectrum of selection in casting their ballot," *In re Nominating Petition of Olshefski,* 692 A.2d 1168, 1173 (Pa.Cmwlth.1997), balancing that with providing the public with confidence and trust in those who are running for office from a financial standpoint under the Ethics Act, he argues that his failure to list the income is not substantial, and we should allow the amendment. Only if we could.

In *State Ethics Commission v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982), our Supreme Court concluded that the requirement that candidates for elective office timely file required financial statements was not a fatal defect to nomination petitions and could be cured by amend-

ment. In 1989, however, the General Assembly, apparently disagreeing with the courts' liberal amendment polices regarding the filing of financial statements, as mentioned, amended the Ethics Act to make it a fatal defect. In *Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146, 149 (1993) (citing Section 4(b)(3) of the former Ethics Act, formerly 65 P.S. § 404(b)(c)), our Supreme Court noted the change and went on to conclude that with the addition of this language, the General Assembly "foreclosed the possibility of curing by amendment the untimely filing of a financial interest statement with the local governing authority, and by the same token foreclosed our inquiry into the individual circumstances which may have contributed to the untimely filings." *Id.See also* footnote 2.

Accordingly, because Benninghoff failed to list the source of his income as a State Representative and we are compelled to follow the law as it is presently written, we regrettably must set aside his nomination petition and grant the petition filed by Smith.

### ORDER

AND NOW, this 23rd day of March, 2004, the Petition to Set Aside the Nomination Petition filed by Paula A. Smith is GRANTED and the Secretary of the Commonwealth is DIRECTED to remove the name of Kerry Benninghoff for the Office of Representative in the General Assembly from the 171st Legislative District in the 2004 Primary Election.

LEAVITT, J., dissents and files opinion.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. Petitioner Paula Smith seeks relief under three specific provisions of the Pennsylvania Election Code (Election Code): [1] Sections 951(b), 909, and 977, 25 P.S. §§ 2911(b), 2869, and 2937. There is no mention of a Statement of Financial Interest (financial statement) in any of those provisions or, indeed, in any provision of the Election Code.

Candidates are, of course, required to attach a copy of their financial statement to their nomination petition. The Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1104(b), forbids the Secretary of State from accepting a petition lacking a copy of this statement. 65 Pa. C.S. § 1104(b)(3). However, the Legislature did not direct the Secretary to inspect the content of the financial statement and examine it for deficiencies. That responsibility has been assigned to the State Ethics Commission (Ethics Commission), the agency charged with enforcement of the Ethics Act. Candidates file the original of their financial statement with the Ethics Commission and append only a copy of that statement with the nomination petition filed with the Secretary of State. The filing of that copy is in aid of the Ethics Commission's enforcement of the Ethics Act.

Specifically, Section 1107(5) of the Ethics Act gives the Ethics Commission the authority to review the contents of financial statements. Section 1107(5) provides:

In addition to other powers and duties prescribed by law, the commission shall:

\* \* \*

(5) *Inspect statements of financial interests which have been filed in order to ascertain whether any reporting person has failed to file such a statement or has filed a deficient statement.* If, upon inspection, it is determined that a reporting person has failed to file a statement of financial interests or that any

---

**1.** Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591.

statement which has been filed fails to conform with the requirements of section 1105 (relating to statement of financial interests), then the commission shall in writing notify the person. Such notice shall state in detail the deficiency and the penalties for failure to file or for filing a deficient statement of financial interests.

65 Pa.C.S. § 1107(5) (emphasis added).

The regulation at 51 Pa.Code § 19.3 [2] further explains how the Ethics Commission is to handle deficient financial statements. If the Ethics Commission finds a deficiency in the course of an audit, it must offer the filer an opportunity to amend it. On the other hand, if the Ethics Commission discovers the deficiency as a result of a complaint lodged by a member of the public, then the Ethics Commission has the discretion to proceed under 51 Pa.Code § 19.3(b) to institute an immediate enforcement action. In deciding whether to exercise this prosecutorial discretion, the Ethics Commission considers, *inter alia,* whether the deficiency was intentional. Alternatively, the Ethics Commission may employ the "procedures of Chapter 21" [3] to address the deficiency in a financial statement identified by a private complainant. 51 Pa.Code § 19.3(b).

The Ethics Commission, not the court, has been charged with the initial responsibility to determine whether a financial statement is deficient and, if so, the appropriate response. By addressing the claim in Smith's petition that Representative Benninghoff's financial statement is deficient, we run the risk of interfering with a duty conferred on the Ethics Commission

**2.** It provides:

19.3. Late or deficient filings.
(a) *If an audit or inspection determines that a required filing is deficient or that a required filing has not been made, the Commission will provide written notice to the individual required to file,* detailing the deficiency and the penalties for deficient filing or failure to file.
(b) *If a complaint is received alleging that a required filing is deficient or has not been made, the Commission may elect to proceed in the matter under this section* rather than through the investigative procedures of Chapter 21 (relating to investigations).
 (1) Upon election, the complainant will be notified of the decision as well as the final resolution of the matter.
 (2) *In determining whether to proceed under this section, the Commission may* consider whether:
 (i) *The deficient filing or failure to file was intentional.*
 (ii)The filer had prior notice of the requirements of the act.
 (iii)The filer has in the past complied with the act.
(c) *The individual notified in accordance with subsection (a) has 20 days from the mailing date of the notice to correct deficiencies or to file a Statement of Financial Interests.* If an individual fails to file or to correct his statement within that time, the Commission will review the matter to determine whether a civil penalty is appropriate under the act.
(d) If the Commission determines that a penalty is appropriate, it will issue a rule to show cause, notifying the individual of his deficiency under the act and of the grounds for the rule and of his opportunity to respond in writing to the rule. If cause is not shown, the rule and penalty therein become absolute.
(e) The Commission may assess a penalty of not more than $25 per day for the time a Statement of Financial Interests remains delinquent up to a maximum of $250 total.
(f) *The penalty in subsection (d) is in addition to other penalties provided by law* and the filing of a Statement of Financial Interests in accordance with subsection (a) does not otherwise vitiate the failure to comply with the act.
51 Pa.Code § 19.3 (emphasis added).

**3.** Chapter 21, at 51 Pa.Code §§ 21.1–21.30, establishes a procedure for confidential investigations, hearings and the issuance of different administrative orders, each appropriate to address the violation. Penalties available to the Ethics Commission include ordering restitution, issuing a cease-and-desist order, ordering corrective action or referring the matter to other law enforcement agencies. 51 Pa.Code § 21.30.

by the Legislature. Accordingly, I believe the doctrine of primary jurisdiction[4] is implicated here. *See* Richard J. Pierce, Jr., Administrative Law Treatise § 14.1 (4th ed. 2002).

Under the doctrine of primary jurisdiction, the agency lays the foundation for determining crucial questions. It does not oust the court's jurisdiction but, rather, postpones its exercise in order to ensure coordination between the work of the court and that of the agency. *United States v. Philadelphia National Bank*, 374 U.S. 321, 353, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963) ("the doctrine requires judicial abstention in a case where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."). *See also Elkin v. Bell Telephone Company of Pennsylvania*, 491 Pa. 123, 135–136, 420 A.2d 371, 378 (1980) (Eagen, C.J., concurring) (noting that referral to an agency is appropriate to protect the integrity of a statutory scheme and is not limited to cases raising "complex" issues). In this case, application of the doctrine of primary jurisdiction requires that the Ethics Commission determine whether the candidate filed a deficient statement, and, if so, whether the deficiency can be cured[5] by an administrative order entered either by consent or by adjudication after a hearing. Only then can it be known whether the candidate must be removed from the ballot for failing to file a financial statement in accordance with the Ethics Act.

The majority rejects the application of the doctrine of primary jurisdiction contending that under the Judicial Code[6] our jurisdiction is exclusive. This Court has removed candidates from a ballot for failing to file *any* timely financial statement with the Ethics Commission. *See, e.g., State Ethics Commission v. Baldwin*, 498 Pa. 255, 445 A.2d 1208 (1982); *Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146 (1993). By contrast, this case concerns whether the financial statement filed with the Ethics Commission is deficient. More importantly, *Baldwin* and *Cioppa* did not consider the issue of primary jurisdiction.

Section 764(2) of the Judicial Code provides an exception for "nomination . . .

4. Benninghoff raised the defense of the jurisdiction of the Ethics Commission in paragraph 8 of his amended and supplemental response to the petition to set aside the nomination petition and cross motion for leave to amend the nomination petition. In any event, jurisdiction may be raised by a court *sua sponte.*

5. Of course, if the deficiency were not cured or found not curable, the Ethics Commission could initiate an action to remove a candidate from the ballot. *See State Ethics Commission v. Baldwin*, 498 Pa. 255, 259 n. 4, 445 A.2d 1208, 1210 n. 4 (1982) (stating that Ethics Commission has implicit authority to institute such an action in order to carry out the purpose of the Ethics Act). We recognize that the Ethics Act has been amended since the Supreme Court's decision in this case; however, the amendment does not affect the continued viability of this holding with respect to the authority of the Ethics Commission to seek the removal of a candidate from the ballot.

6. 42 Pa.C.S. § 764(2) provides that this Court has original exclusive jurisdiction of "matters arising in the Office of the Secretary of the Commonwealth relating to Statewide office, except nomination and election contests within the jurisdiction of another tribunal." "Statewide office" is not defined in the Judicial Code. In *Lawless v. Jubelirer*, 789 A.2d 820, 831 (Pa.Cmwlth.2002), this Court held that a member of the General Assembly, at least for the purposes of the Pennsylvania Constitution, does not hold an "office." Cases involving state representatives that arise under the Election Code do implicate our jurisdiction under 42 Pa.C.S. § 764. *In re Vidmer*, 65 Pa.Cmwlth. 562, 442 A.2d 1203, 1204 (1982). However, this case arises under the Ethics Act.

contests within the jurisdiction of another tribunal." *Id.*[7] Here, Smith challenges Representative Benninghoff's right to appear on the ballot because she claims that the financial statement he filed with the Ethics Commission is deficient as to its content. This claim is for the Ethics Commission to hear, which may, after a hearing,[8] determine that the financial statement is not deficient or order the statement to be corrected. Until it has acted, however, it is inappropriate for this Court to usurp the authority of the Ethics Commission to review, investigate and act upon an alleged deficiency in a financial statement.

The majority states that there is "no dispute" that this case concerns "the propriety of the nomination petition." In fact, Smith has challenged the propriety of a financial statement, not a nomination petition. The majority further notes, in bold type, that "we cannot ignore the clear mandates of the Election Code." Opinion, n. 2. However, the majority fails to show where in the Election Code the "clear mandates" exist that require the result reached and the ability to reach it in the absence of a determination by the Ethics Commission.

For these reasons, I believe this Court lacks jurisdiction to consider Smith's peti-

tion and to remove Representative Benninghoff from the ballot at this time.

---

**7.** The majority notes that the Ethics Commission cannot order a candidate to be removed from the ballot. However, it can seek this penalty, and its right to do so was acknowledged in *Baldwin*. The point is that under the Ethics Act, the Ethics Commission has exclusive jurisdiction to determine whether a financial statement is deficient.

The majority also notes that the respondent did not argue jurisdiction in his brief. However, the respondent did raise jurisdiction in his answer to the petition. *See supra* n. 4. In any case, jurisdiction is never waived.

**8.** Administrative agencies may conduct hearings on an expedited basis just as courts do when the occasion arises. Further, the hearing can be waived by a respondent willing to consent to an administrative order that corrects the deficiency in the financial statement. Presumably, the Ethics Commission would not initiate a judicial action to remove a candidate from the ballot if the deficiency was resolved. The majority's arguments on this point highlight other issues, such as standing and whether there is a private right of action under the Ethics Act. These issues, however, have not been preserved.